NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CAMPMOR, INC., : | |
| : | |
| Plaintiff, : | **OPINION** |
| : | |
| v. : | Civ. No. 09-5465 (WHW) |
| : | |
| BRULANT, LLC, : | |
| : | |
| Defendant. : | |

**Walls, Senior District Judge**

Defendant Brulant moves in limine to preclude the testimony of Brian Cooper, Plaintiff Campmor's expert witness on search engine optimization ("SEO"). The Court held a *Daubert* hearing on April 10, 2013. The motion is denied.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case have been fully set forth in the Court's previous opinions. ECF Nos. 13, 50. In brief, Campmor, a retailer of camping and recreational equipment, hired Brulant to upgrade its e-commerce website. Final Pretrial Order at 4-6 (ECF No. 80). The updated website was launched in March 2009. *Id.* at 6, ¶¶ 18-19. Campmor alleges that the resulting website was riddled with problems and the website's SEO visibility diminished. *Id.* at 10-11, ¶¶ 29, 32. *See also* Am. Compl. ¶ 60. In June of 2009, Campmor terminated the SEO portion of its contract with Brulant and assigned its SEO work to another vendor. Brulant's Br. at 2 (ECF No. 86-1).

**NOT FOR PUBLICATION**

Campmor retained a company called Net Concepts to prepare an SEO audit, which took the form of a PowerPoint presentation that identifies existing SEO issues and strategies for SEO growth. Ex. L, Drasco Decl. (ECF No. 88) ("SEO Audit Report").

Brian Cooper is Plaintiff Campmor's expert on the subject of SEO. The goal of SEO is to increase targeted Internet traffic by optimizing the website for search engines; this involves editing a website's content and code to increase its relevance to specific keywords and to remove barriers to the indexing activities of search engines. *See* Supplemental Report at 4-5 (ECF No. 96-4). Mr. Cooper prepared his first expert report in November 2010. ECF No. 33-3. Brulant moved in limine to strike that report and the Court held a *Daubert* hearing on July 13, 2011. ECF No. 54. The Court concluded that Mr. Cooper was qualified on the subject of SEO, but his conclusions were too cursory and his methodology was vague. Tr. at 10-16, Ex. K, Coleman Cert. Mr. Cooper submitted a supplemental report on August 17, 2011. ECF No. 96-4. Like the first report, the second report concludes that Brulant failed to meet SEO "best practice" standards. Supplemental Report at 8. The difference is that the second report is longer, provides more explanation about SEO "best practices" and contains more footnote citations to Google documents—including the Google Search Engine Optimization Starter Guide, which Mr. Cooper calls "the single most authoritative publication on fundamental SEO strategy." *Id.* at 5.

Brulant again moves in limine to preclude the expert testimony of Mr. Cooper, arguing that the supplemental report does not adequately address the Court's concerns about methodology. ECF No. 86. The Court held a second *Daubert* hearing on April 10, 2013.

**NOT FOR PUBLICATION**

## STANDARD OF REVIEW

The standard for admissibility of expert testimony is set forth in Federal Rule of Evidence 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993), the Supreme Court further required federal courts to play a "gatekeeping rule" in allowing expert testimony. Although *Daubert* was decided in the context of scientific knowledge, its holding has been extended to technical and other specialized knowledge. *Oddi v. Ford Motor Co.*, 234 F.3d 136, 146 (3d Cir. 2000) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999)).

Rule 702 embodies three distinct restrictions on the admission of expert testimony: qualifications, reliability, and fit. *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994)). Defendant in this case challenges Mr. Cooper's reliability. To determine whether an expert's methodology is reliable, a court may consider these factors:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

3

**NOT FOR PUBLICATION**

*Id.* at 745-46 (citations omitted). This list is non-exclusive and each factor need not be applied in every case. *Id.* at 746. When an expert is testifying about technical or specialized knowledge rather than science, a trial court has "considerable leeway" to decide "whether particular expert testimony is reliable" and to consider "the specific factors…where they are reasonable measures of the reliability of expert testimony." *Id.* (quoting *Kumho Tire Co.*, 526 U.S. at 152). The burden is on the proponent of expert testimony to show that the *Daubert* requirements are met by a preponderance of the evidence. *In re TMI Litig.*, 193 F.3d 613, 663-65 (3d Cir. 1999).

## DISCUSSION

In this latest round of briefs, Defendant Brulant challenges Brian Cooper's reliability. First, Brulant argues that Cooper's methodology is flawed because his expert opinion is based upon an SEO Audit Report that was prepared by Net Concepts, Campmor's paid consultant. Cooper did not personally test or analyze Campmor's website. Second, Brulant objects to Mr. Cooper's reliance on the 2010 Google Starter Guide. The Court addresses each issue in turn.

### I.       2009 SEO Audit Report

Mr. Cooper relies mainly upon the empirical information contained in the Net Concepts SEO Audit Report. Supplemental Report at 10. He was also shown data comparing website traffic of Campmor.com with competitive companies in the same time period. Second Deposition of Brian Cooper at 235 ("Cooper Dep."), Ex. R, Drasco Decl. Defendant Brulant argues it is "axiomatic" that Mr. Cooper's opinion is unreliable because he did not personally test any SEO data for Campmor.com, nor did he personally review the SEO work that was undertaken by Brulant. Op. Br. at 9 (ECF No. 86-1).

**NOT FOR PUBLICATION**

Defendant Brulant is incorrect that an expert's opinion must be based upon his or her own independent testing. "[A]n expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert*, 509 U.S. at 592 (citing Fed. R. Evid. 702 & 703). "Trained experts commonly extrapolate from existing data." *GE v. Joiner*, 522 U.S. 136, 146 (1997). Expert testimony that relies upon reports or data generated by others is routinely admissible. *See Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 807-9 (3d Cir. 1997) (holding that doctor's expert opinion was admissible though he only examined patient's medical records and did not personally conduct a physical examination); *Lesser v. Camp Wildwood*, 282 F. Supp. 2d 139, 144 (S.D.N.Y. 2003) ("Neither *Daubert* nor *Kumho Tire* requires physical examination where informed and reasonable inferences can be made from photographic evidence and the reliable testimony of others."); *Geis v. Tricam Industries, Inc.*, No. 09-1396, 2010 WL 8591142, at *1-2, 8 (D.N.J. Oct. 6, 2010) (holding expert testimony as to ladder design defects admissible even though expert did not personally perform tests on the subject ladder). In sum, the fact that Mr. Cooper did not do independent testing of Campmor's website is not fatal.

But there are instances where the data underlying the expert's opinion is "so unreliable that no reasonable expert could base an opinion on them" and "the opinion resting on that data must be excluded." *In re TMI Litig.*, 193 F.3d at 697 (holding that district court properly excluded expert testimony where the sole basis for the testimony was health summaries prepared by "employees of Trial Plaintiffs' counsel"). *See also In re Paoli Railroad Yard PCB Litig.*, 35 F.3d at 762 (expert testimony properly excluded "where [physicians] based their conclusion as to a plaintiff's symptoms on the plaintiff's self-report of illness in preparation for litigation"); *Montgomery County v. Microvote Corp.*, 320 F.3d 440, 448-49 (3d Cir. 2003) (affirming

**NOT FOR PUBLICATION**

exclusion of expert who relied upon documents, though he did not know who created the documents or the source of the information contained therein, relied upon tapes that were selected by defendant's attorney).

The SEO Audit Report does not belong in this suspect category and does not render Mr. Cooper's testimony inadmissible. The SEO Audit Report was prepared by Net Concepts in 2009 after Campmor terminated the SEO portion of its contract with Brulant. Brulant's Br. at 2 (ECF No. 86-1). Both parties concurred at the *Daubert* hearing that this report was not prepared with litigation in mind, and it does not read as such. The report is in the form of a PowerPoint presentation that reads like a business proposal interspersed with data and analysis, identifying "a number of search engine visibility strength and weaknesses." SEO Audit Report at 2. The report may be viewed as a relatively unbiased snapshot of Campmor.com's SEO situation in 2009. As example, it is not entirely uncomplimentary about the upgraded website, stating that "data collected from the build process that started back in July 2009 reveals that the newly redesigned and launched site was starting to gain traction in the search engines." SEO Audit Report at 7 (emphasis added). At the same time, the report specifically identifies some website glitches that are detrimental to Campmor.com's SEO. *See, e.g., id.* at 7-8. The SEO Audit Report data is not so unreliable that Mr. Cooper's expert testimony must be excluded. To the extent that the report is not an ideal data source, that factor goes to the weight of Mr. Cooper's testimony. As the Supreme Court said in *Daubert*, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 596.

This case is also distinguishable from *Willis v. Besam Automated Entrance Systems, Inc.*, No. 04-913, 2005 WL 2902494 (E.D. Pa. Nov. 3, 2005). Brulant cites *Willis* for the proposition

**NOT FOR PUBLICATION**

that an expert's testimony is inadmissible if the expert does no personal testing. Plaintiff in *Willis* was injured by an automatic revolving door. *Id.* at *1. The court's exclusion of the proffered expert was bolstered by many other factors. Not only did the expert not inspect the subject door or its safety devices, he also "never inspected or tested any *similar* automatic revolving door or safety devices." *Id.* at *6 (emphasis added). He in fact "had no experience with the safety devices on the subject door." *Id.* at *7. While the expert had an engineering background, he "has never designed, installed, or serviced an automatic revolving door" and "was not familiar with automatic revolving doors prior to this case." *Id.* at *8. The expert "has no specialized knowledge or experience relating to the operation or maintenance of the automatic revolving door." *Id.* By contrast, Mr. Cooper has experience working on SEO for numerous websites and he has specialized knowledge on this very technical subject matter. A person of Mr. Cooper's qualifications could look at the data contained in the SEO Audit Report and provide testimony that is helpful to a fact-finder.

## II.     Google Starter Guide

Mr. Cooper's expert testimony goes to whether Brulant's SEO work for Campmor.com deviated from "best practice" standards. As for what defines "best practices" within the SEO industry, Mr. Cooper relies upon Google's Search Engine Optimization Starter Guide ("Google Starter Guide"), which he calls "the single most authoritative publication on fundamental SEO strategy." Supplemental Report at 5. In the briefs, Brulant does not dispute this. The biggest difference between Mr. Cooper's first expert report and his supplemental report is that the latter contains more citations to the Google Starter Guide and other Google webpages.

Defendant Brulant argues that Mr. Cooper's testimony should be excluded because he improperly cites to a version of the Google Starter Guide that was published in 2010, *after*

**NOT FOR PUBLICATION**

Brulant was terminated from SEO work on Campmor.com. Op. Br. at 10 (ECF No. 86-1). Brulant's argument does not hold up under scrutiny. Mr. Cooper relies upon the Google Starter Guide for general principals of best practice in the SEO industry; such reliance is only unfair if the 2010 version contains material differences from the older version and those differences are relevant to his testimony. The SEO Starter Guide has been in existence since at least 2008. *See* Coleman Cert., Ex. L. A review of the 2008 version with the 2010 version reveals little substantive difference. Both guides provide the same tips like "Create unique, accurate page titles," "Make use of the 'description' meta tag," and "Improve the structure of your URLs." *See* Ex. B & Ex. C, Drasco Decl. (ECF No. 105-1). As example, Mr. Cooper's report states that "[a] common practice among SEO practitioners is to create a useful custom 404 page," Supplemental Report at 26, and this recommendation is contained in both versions of the Google Starter Guide. Plaintiff Campmor has also submitted evidence showing that the 2010 changes to the Guide were non-substantive and only involved: (1) adding a glossary; (2) more example images; (3) ways to optimize a website for mobile devices; and (4) clearer wording for better readability. Coleman Cert., Ex. M. That one version uses the phrase "good practices" while the other uses "best practices" is also of no substantial moment. The Court will not exclude expert testimony on the basis of a technicality. *See, e.g., INA Walzlager Schaeffler KG v. United States*, 108 F.3d 301, 306 (Fed. Cir. 1997) ("[Government's] use of an outdated edition of a reference work on which it placed significant reliance certainly seems to reflect careless staff work. It does not, however, require reversal, because the error was not prejudicial in the circumstances of this case").

At the hearing, Defendant, with consent of Plaintiff, introduced into evidence the transcript of the September 20, 2011 deposition of Brian Cooper. This Court was remiss by such acceptance. The Court should have required Defendant to particularize what it wished the Court

**NOT FOR PUBLICATION**

to consider. Why? The Court unnecessarily burdened itself with reading a voluminous deposition, most of which irrelevant to the present inquiry. Tossing aside defense counsel's misrepresentation of the Court as "Judge Wallace," why the question, and its extensive exploration, of whether www.kosher.com was the world's largest online supermarket, Cooper Dep. 238:7-240:12, escapes the grasp of the Court in this *Daubert* hearing. The Court finds Mr. Cooper's explanation of why he relied upon the Google Starter Guide appropriate, relevant and satisfactory. Cooper Dep. 250:17-255:24.

At the *Daubert* hearing, Brulant also took a more direct swipe at the Google documents, arguing that they do not meet the "fit" requirement because website upgrades are not discussed. This argument was not made in the briefing. Nor has Brulant presented any evidence or substantive argument as to why the SEO strategies contained in the Google Starter Guide would not apply with equal force to an upgraded website. Both versions of the Google Starter Guide state:

> This document first began as an effort to help teams within Google, but we thought it'd be just as useful to webmasters that are new to the topic of search engine optimization and wish to improve their sites' interaction with both users and search engines. Although this guide won't tell you any secrets that'll automatically rank your site first for queries in Google (sorry!), following the best practices outlined below will make it easier for search engines to both crawl and index your context.

2008 Google's Search Engine Optimization Starter Guide; 2010 Google's Search Engine Optimization Starter Guide. The "fit" standard is not that high, but it is higher than bare relevance. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 743. The contents of the Google Starter Guides clearly speak directly to the issue of "best practices" for SEO and Mr. Cooper's reliance on the guide meets the "fit" requirement of *Daubert.*

**NOT FOR PUBLICATION**

## CONCLUSION

Brulant's motion in limine to preclude the testimony of Brian Cooper as an expert witness is denied.

April 23, 2013

                                               **/s/ William H. Walls**

                                               United States Senior District Judge