**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| CAMPMOR, INC., | : | |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | Civ. No. 09-5465 (WHW) |
| | : | |
| BRULANT, LLC, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |

**Walls, Senior District Judge**

The Court now decides the motions in limine filed by the parties.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case have been fully set forth in the Court's previous opinions. ECF Nos. 13, 50. In brief, Campmor, a retailer of recreational and camping equipment, hired Brulant to upgrade its e-commerce website. Final Pretrial Order at 4-6 (ECF No. 80). The parties signed a Master Services Agreement ("MSA") in November 2006. Ex. A, Drasco Decl. (ECF No. 88). In conjunction with the MSA, the parties also signed Statements of Work ("SOW") in 2006, 2007 and 2008. *See* Exs. B-E, Drasco Decl.; Ex. E, Coleman Cert. (ECF No. 96).

The updated website was launched in March 2009. Final Pretrial Order at 6, ¶¶ 18-19. Plaintiff Campmor alleges that the resulting website was riddled with problems; the most serious errors prevented customers from completing their purchases. *Id.* at 10, ¶ 29. Campmor claims

NOT FOR PUBLICATION

significant revenue loss in internet sales. *Id.* at 14, ¶ 3. Second Am. Compl. ¶¶ 61-64 (ECF No. 16).

The second amended complaint alleged five claims: (1) breach of contract; (2) breach of warranty; (3) common law fraud; (4) negligent misrepresentation; and (5) violation of the New Jersey Consumer Fraud Act. Second Am. Compl. ¶¶ 88-115. The Court granted summary judgment for Brulant on the claims under common law fraud and the New Jersey Consumer Fraud Act. Op. at 13-20 (ECF No. 50). Three claims remain for trial: breach of contract, breach of warranty and negligent misrepresentation. *Id.* at 21.

**STANDARD OF REVIEW**

The Court may consider motions in limine because it has the inherent authority to manage cases brought before it. *Ebenhoech v. Koppers Industries, Inc.*, 239 F. Supp. 2d 455, 461 (D.N.J. 2002) (citing *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984)). The in limine motion fosters efficiency for the Court and for counsel by preventing needless argument at trial. *Id.*; *see also Bradley v. Pittsburgh Bd. of Educ.*, 913 F. 2d 1064, 1069 (3d Cir. 1990). The Court may also defer issues until trial if the context of trial would provide more clarity. *See In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir. 1983), *rev'd on other grounds sub nom., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

The Court considers the pending in limine motions under Federal Rules of Evidence 401, 402, and 403. Rule 401 provides that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in in determining the action." Fed. R. Evid. 401. Irrelevant evidence is inadmissible. Fed. R. Evid. 402. Relevant evidence is subject to exclusion under Rule 403 if its probative value is likely to be outweighed by unfair prejudice or confusion. Fed. R. Evid. 403; *Bhaya v. Westinghouse Elec.*

NOT FOR PUBLICATION

*Corp.*, 922 F.2d 184, 188 (3d Cir. 1990). "Unfair prejudice" has been defined as "'an undue tendency to suggest decision on an improper basis.'" *Id.* at 188 (quoting Advisory Committee Notes on Rule 403).

## DISCUSSION

**BRULANT'S MOTIONS**

**I.    Motion to limit claims to the 6.0 upgrade and SEO work**

Defendant Brulant moves to limit Campmor's claims to the upgrade to WebSphere 6.0 and SEO work performed by Brulant, which occurred between March and June of 2009. Brulant's Br. at 5-7 (ECF No. 87-1). Brulant seeks to preclude from trial all facts and issues related to Brulant's work for Campmor from 2006 to 2008 because Campmor never responded to Brulant's Requests for Admissions concerning this earlier period of time. *Id.* Campmor counters that the Requests for Admissions were never properly served because Brulant failed to include certain exhibits. Opp'n Br. at 6 (ECF No. 94).

In determining whether to exclude evidence based on a failure to comply with discovery obligations, the Court must consider: (1) the prejudice or surprise of the party against whom the evidence would have been used; (2) the ability of that party to cure the prejudice; (3) the extent to which admission or exclusion of evidence would affect orderly and efficient trial; and (4) bad faith or willfulness of the party who failed to comply with its discovery obligations. *Lentz v. Mason*, 32 F. Supp. 2d 733, 739-40 (D.N.J. 1999) (citing *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997)). "The exclusion of critical evidence is an extreme sanction, not normally imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence." *Konstantopoulos*, 112 F.3d at 719 (internal quotations omitted).

NOT FOR PUBLICATION

The Court concludes that exclusion of all facts and issues related to the parties' business relationship between 2006 and 2008 is unwarranted. Their business relationship began in 2006, the year they signed the Master Services Agreement. Ex. A, Drasco Decl. A fact-finder may need that history to inform his decision. *See* Final Pretrial Order at 5.

The remedy for Campmor's failure to respond to Requests for Admissions is set forth in Federal Rule of Civil Procedure 36: "A matter is admitted unless . . . the party to whom the request is directed serves on the requesting party a written answer or objection…" Fed. R. Civ. P. 36(a)(3). *See McNeil v. AT&T Universal Card*, 192 F.R.D. 492, 493-94 (E.D. Pa. 2000). As a result, the matters addressed in Brulant's unanswered Request for Admission are deemed admitted because Campmor failed to respond. Such admissions are conclusively binding and cannot be countered by other evidence. *Airco v. Teamsters Health and Welfare Pension Fund of Philadelphia and Vicinity*, 850 F.2d 1028, 1036 (3d Cir. 1988). Campmor's failure to respond is not excused by the accusation that Brulant did not attach exhibits to the Requests. The sole authority cited by Campmor to support this position is a Ohio state court case that addresses different procedural defects. *See* Opp'n Br. at 6 (ECF No. 94) (citing *Outdoor Prod., Inc. v. The Deck Connection & More, Inc.*, 728 N.E. 2d 44, 47 (Ohio Com. Pl. 1999)). Moreover, Brulant maintains that while the courtesy email copy of the Requests did not have exhibits attached to them, a mailed copy of the Requests did include exhibits. Reply Br. at 5 n.3 (ECF No. 104).

Looking through the Requests for Admissions, the Court finds that the matters addressed are specific and narrow in scope. The Requests ask for verification that Campmor and Brulant entered into a series of agreements between 2006 and 2008. *See* Ex. C, Coleman Cert. It is a leap to infer—as Brulant does—that Campmor has admitted Brulant "efficiently performed services for Campmor" from 2006 through 2008. Brulant's Br. at 6 (ECF No. 87-1). The specific

**NOT FOR PUBLICATION**

statements contained in the Requests for Admissions are deemed admitted; other issues and facts related to Campmor and Brulant's business relationship between 2006 and 2008 are not excluded from trial.

Brulant's motion is denied.

## II.    Motion to bar Plaintiff from referring to "Best Practice Standards"

Brulant seeks to bar Campmor from referring to "best practice standards." Brulant's Br. at 8-9 (ECF No. 87-1). Brulant contends these standards are undefined, are not accepted in the technology community, and should not be used to impose liability. *Id.* Campmor points out that the term "best-practices" is used in the 2008 Statement of Work Campmor signed with Brulant. Opp'n Br. at 9 (ECF No.94) (citing Coleman Cert., Ex. E at 2). On a breach of contract claim, a fact-finder's determination of whether Brulant delivered what it promised in the contracts can include whether Brulant followed "best-practices." *Id.*

The Court agrees with Campmor. As the Court said in its summary judgment opinion, "[t]he issue, quite simply, is whether Brulant delivered what it promised in the contract." Op. at 7 (ECF No. 50). When the contract itself promises to "[u]pgrade the underlying Websphere Commerce platform to version 6.0 with a *best-practices* configuration and all major component functioning property," 2008 SOW at 2, Ex. E, Coleman Cert. (emphasis added), whether Brulant followed best practices is a legitimate issue for trial.

Brulant also misconstrues the Court's summary judgment opinion. The Court granted summary judgment for Brulant on the common law fraud claim. In doing so, the Court concluded that Brulant did not *intentionally* deceive Campmor about its plan to use "best-practices" in the website upgrade; Brulant did not commit fraud. Op. at 17-18 (ECF No. 50). But

**NOT FOR PUBLICATION**

whether those "best-practices" were ultimately delivered is a separate issue and goes to the breach of contract claim.

Brulant's motion is denied.

## III.    Motion to bar Plaintiff from relying upon extra-contractual information

Brulant moves to exclude from trial any information outside the contracts entered into by the parties. This includes "marketing information, PowerPoint presentations, status updates, charts, and other similar data, information and oral statements, including any unsigned agreements or SOWs." Brulant's Br. at 10 (ECF No. 87-1). Brulant argues that the Master Services Agreement and the counter-signed Statements of Work are fully integrated agreements that set forth Brulant's contractual obligations. No other information is needed. *Id.* Campmor counters that most of the documents—including status updates, charts, similar data, oral statements—are relevant to Brulant's performance of its contractual obligations. Opp'n Br. at 12 (ECF No. 94).

The Master Services Agreement reads:

This Agreement and the attached Statement of Work constitutes the complete agreement and understanding between the parties with respect to the subject matter hereof and supersede all prior agreements and understandings, written or oral. No waiver, alteration or modification of the provisions hereof shall be binding on either party unless in writing signed by a duly authorized representative of each party.

MSA at 4. The parties seem to agree that the MSA and the SOWs (from 2006, 2007 and 2008) constitute the contract between the parties. Brulant's Br. at 10 (ECF No. 87-1); Opp'n Br. at 11-12 (ECF No. 94); Reply Br. at 8 (ECF No. 104).

The parol evidence rule states that "the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements." *United States Constr. Corp. v.*

NOT FOR PUBLICATION

*Harbor Bay Estates, Ltd.*, 172 Ohio App. 3d 609, 615 (Ohio Ct. App. 2007) (quotations omitted). If a contract's terms are unambiguous and clear on their face, the court need not look beyond the plain language of the contract in order to determine the rights and obligations of the parties. *Beasley v. Monoko, Inc.*, 195 Ohio App. 3d 93, 103-04 (Ohio Ct. App. 2011). The parol evidence rule is *not* a rule of evidence; it is a rule of substantive contract law that aims to "protect the integrity of written contracts." *Academic Imaging, LLC v. Soterion Corp.*, 352 F. App'x 59, 65 (6th Cir. 2009) (quoting *Galmish v. Cicchini*, 90 Ohio St. 3d 22 (Ohio 2000)). Under this rule, the Court concludes that the signed MSA and SOWs fully set forth Brulant's contractual obligations. Campmor may not introduce other documents or information to augment those obligations.

But the parol evidence rule does not prohibit a party from introducing parol or extrinsic evidence for the purpose of proving fraudulent inducement or negligent misrepresentation. *Galmish*, 90 Ohio St. 3d at 28; *Academic Imaging*, 352 F. App'x at 65-66 (citing *Clemente v. Gardner*, No. 2002-CA-00120, 2004 WL 953700, at *6 (Ohio Ct. App. Apr. 26, 2004); *Brothers v. Morrone-O'Keefe Dev. Co., LLC*, No. 03AP-119, 2003 WL 22999474, at *7 (Ohio Ct. App. Dec. 23, 2003)). The Court has previously held that the parol evidence rule does not preclude Campmor from advancing its negligent misrepresentation claim. Op. at 10-11 (ECF No. 13); Op. at 13-14 (ECF No. 50). Under those same principles, the rule does not prevent Campmor from introducing extrinsic evidence to show that it was induced to enter the contract with Brulant due to alleged misrepresentations.

Brulant's motion is granted in part and denied in part.

**NOT FOR PUBLICATION**

**IV.     Motion to bar lay testimony of Campmor managers and employees**

Brulant moves to bar lay testimony from Campmor managers and employees as to "what was allegedly done wrong by Brulant from a technical standpoint." Brulant's Br. at 13 (ECF No. 87-1). Brulant does not dispute that Campmor managers and employees may testify as to "what they perceived did not work from a lay person perspective." *Id.* at 14. On this issue, the parties seem to agree more than they disagree. *See* Opp'n Br. at 12-13 (ECF No. 94). Federal Rule of Evidence 701 provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701. No one disputes that Campmor employees may testify as lay witnesses under this rule. But Brulant pushes the issue further by stating that Campmor employees "cannot testify as to Brulant's performance because such testimony is not based on technical or specialized knowledge in this field." Brulant's Br. at 13 (ECF No. 87-1). The Court has already rejected this position in its summary judgment opinion:

> Jarashow and other Campmor employees who were involved with the website project can testify about their expectations, and how the end result fell short. . . . [R]epresentatives of Campmor do not need to know how to build a website themselves in order to know that they did not receive what they expected.
>
> Similarly, a jury will be able to understand the testimony. In 2011, the average juror can be expected to be familiar with the internet and websites. . . . An issue that prevents a customer from buying an item is a devastating problem for a retail website; Jarashow does not need to have a degree in computer science to explain this, and jurors do not need one to understand it.

**NOT FOR PUBLICATION**

Op. at 8-9 (ECF No. 50). The Court concluded that expert testimony was not required for a fact-finder to determine whether Brulant "delivered what it promised in the contract." *Id.* at 7. As an evidentiary matter, Campmor employees may testify as lay witnesses and may not provide "expert" testimony that is within the scope of Federal Rule of Evidence 702. Just because the testimony provided is not of a technical nature, it does not follow that such testimony does not bear on the issue of Brulant's performance under the contact. The Court has already ruled that it does.

Brulant's motion is denied.

**V.     Motion to bar testimony by representatives of Red Baritone or Net Concepts**

Red Baritone and Net Concepts are companies that Campmor hired for e-commerce support and SEO after its relationship with Brulant ended. Campmor has identified several employees from Red Baritone and Net Concept to be fact witnesses at trial. *See* Final Pretrial Order at 31, ¶ 5(A). Brulant argues that these witnesses can only testify regarding factual issues and are precluded from offering any expert testimony. They should also be barred from evaluating Brulant's services in any manner. Brulant's Br. at 15-16 (ECF No. 87-1). Campmor counters that, like the Campmor employees, the witnesses from Red Baritone and Net Concepts do not need to be designated as expert witnesses in order to "provide fact testimony based on their first-hand observations of the website operation they inherited" and "opinion testimony rationally based on their perception." Opp'n Br. at 13 (ECF No. 94).

Federal Rule of Evidence 701(c) states that a lay witness's testimony may not be "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c). Subsection (c) was added to address the risk that parties may try to evade the requirements of Rule 702 by "'proffering an expert in lay witness clothing.'" *Hirst v. Inverness*

**NOT FOR PUBLICATION**

*Hotel Corp.*, 544 F.3d 221, 227 (3d Cir. 2008) (quoting Fed. R. Evid. 701 Advisory Committee's Notes to 2000 Amendments). But the Third Circuit recognizes that an expert witness is not always necessary whenever the testimony is of a specialized or technical nature:

> When a lay witness has particularized knowledge by virtue of her experience, she may testify—even if the subject matter is specialized or technical—because the testimony is based upon the layperson's personal knowledge rather than on specialized knowledge within the scope of Rule 702.

*Donlin v. Philips Lighting North American Corp.*, 581 F.3d 73, 81 (3d Cir. 2009) (citations omitted). *See also United States v. DeMuro*, 677 F.3d 550, 562 (3d Cir. 2012) ("we have allowed professionals to give lay opinions when opinions are based on personal knowledge of the issues, along with specialized experiences") (citation omitted); *United States v. Thompson,* 393 F. App'x 852, 857-59 (3d Cir. 2010) (district court did not err in allowing a company employee to testify as lay witness about GPS tracking device).

Here, witnesses from Red Baritone and Net Concept will probably give testimony that is highly technical. The work that they were hired to do for Campmor was of a technical nature. This does not mean that Campmor is improperly dressing up experts in "lay witness clothing." Employees from Red Baritone and Net Concepts can testify as to their work as e-commerce vendors for Campmor and give their first-hand observations about the status of Campmor.com at the time they took over the project from Brulant. Under the Third Circuit's holdings in *Donlin*, *DeMuro* and *Thompson*, these witnesses may provide testimony about a specialized or technical subject matter so long as that testimony is based on their personal knowledge and experience. *See also Forest Labs., Inc. v. Ivax Pharms., Inc.*, 237 F.R.D. 106, 114-15 (D. Del. 2006) (a doctor, "though not an expert in pharmacology, possesses sufficient knowledge and expertise to testify as to the results of research work that he himself performed"). Campmor is not required to designate employees from Red Baritone and Net Concepts as expert witnesses.

NOT FOR PUBLICATION

The Court is aware that a line may easily be crossed. Lay witnesses who are trained as computer programmers discussing website design may influence a jury the way an expert witness would. Since the witnesses at Red Baritone and Net Concepts were not personally involved when Brulant was employed to upgrade Campmor's website, they may not give speculative opinions as to what Brulant did or did not do, or whether Brulant followed "best practices" in upgrading Campmor's website. Such testimony is not based on their first-hand experience and trespasses into expert testimony territory covered by Federal Rule of Evidence 702.

Brulant's motion in limine is granted in part and denied in part.

**VI.     Motion to bar plaintiff from introducing customer feedback emails at trial**

Brulant moves to exclude Campmor's trial exhibit number 42, a copious selection of customer emails complaining about the updated website. Also included are emails from Campmor employees responding to these complaints and forwarding them to Brulant. *See* Ex. J, Drasco Decl. (ECF No. 88) (Campmor trial exhibit list); Ex. J, Jarashow Cert. (ECF No. 40) (customer emails). Brulant objects to admission of these emails to show that the website was poorly designed and implemented.

First, Brulant argues that these emails are not relevant and highly prejudicial. The Court disagrees. The customer emails are admissible not for the truth of the matter asserted—whether certain technical aspects of the website were implemented correctly—but to show that numerous customers were unsatisfied with the updated website and had problems completing their purchase. This is probative as to whether Brulant delivered to Campmor what it promised in the contract. Other courts have admitted customer complaints despite technical rule-based objections because such complaints speak to the customer's state of mind or have sufficient guarantees of

**NOT FOR PUBLICATION**

trustworthiness. *See Federal Trade Comm'n v. Magazine Solutions, LLC*, No. 7-692, 2009 WL 690613, at *1-*2 (W.D. Pa. Mar. 16, 2009) (admitting into evidence customer complaints submitted to state agencies and defendant companies themselves under Fed. R. Evid. 807); *Componentone, LLC v. Componentart, Inc.*, No. 05-1122, 2008 WL 4790661, at *19 (W.D. Pa. Oct. 27, 2008) (customer emails can be used to show confusion); *David's Bridal, Inc. v. House of Bridges, Inc.*, No. 06-5660, 2010 WL 323306, at *5 (D.N.J. Jan. 20, 2010) (same).

This evidence is not *unfairly* prejudicial because it speaks directly to the case at hand. A classic example of evidence that is unfairly prejudicial is evidence showing that "a party committed wrongs other than those at issue in a case." *See Bhaya*, 922 F.2d at 188 (admission of out-of-court statements that defendant committed other illegal but unspecified acts was prejudicial and should be excluded). *Compare also Brown v. DaVita Dialysis*, No. 09-3892, 2012 WL 460067, at *3 (E.D. Pa. Feb. 13, 2012) (email chain irrelevant because it described events occurring more than two years after plaintiff's termination, and has nothing to do with plaintiff, her termination, or any inference of racial animus); *Antoninetti v. Chipotle Mexican Grill, Inc.*, No. 05-1660, 2007 WL 3333109, at * 4-5 (S.D. Ca. Nov. 8, 2007) (customer complaints irrelevant and prejudicial because they don't concern the restaurants at issue). Here, customers are commenting directly on the updated website that was unveiled to the public. The evidence is relevant and admissible.

Second, Brulant argues that the emails violate Federal Rule of Evidence 1006. Rule 1006 provides that the proponent of evidence "may use a summary, chart, or calculation to prove the contents of voluminous writings . . . that cannot be conveniently examined in court." Fed. R. Evid. 1006. Campmor does not submit Exhibit 42 as a summary under Rule 1006, so this objection lacks merit.

NOT FOR PUBLICATION

Lastly, Brulant complains that Campmor neglected to follow the instructions of the magistrate judge, who told Campmor to list the emails separately—even if they are being submitted as one exhibit—so that the Court may examine them one by one. Campmor then provided a chart of the individual bates numbers of the emails provided in Exhibit 42. *See* Ex. P, Coleman Cert (ECF No. 96). This chart is not a model of clarity: it could have been more detailed and better labeled. But in the interest of judicial efficiency, evidence will not be excluded on the grounds of poor formatting.

Brulant's motion is denied.

## VII.   Motion to exclude internal Brulant emails

Brulant seeks to exclude certain internal emails sent by Brulant employees to each other that speak negatively about Brulant's work for Campmor, asserting that these emails are inadmissible hearsay. Emails from three individuals are challenged: Scott Young, Dave Fazekas, and Chris Boggs. *See* Ex. G, Coleman Cert. (ECF No. 96).

Under Federal Rule of Evidence 801(d)(2)(D), "a statement by the party's agent or employee on a matter within the scope of that relationship and while it existed" is admissible hearsay. Fed. R. Evid. 801(d)(2)(D). *See, e.g., Tisa v. Beasley FM Acquisition Corp.*, 343 F. App'x 793, 798 (3d Cir. 2009) (statement made by independent contractor who had a "heavy hand in the operations" on a daily basis is admissible); *Marra v. Philadelphia Housing Auth.*, 497 F.3d 286 (3d Cir. 2007) (admitting hearsay evidence from employees who were not personally involved in company's decision to terminate plaintiff; extent of declarant's involvement goes to weight of testimony).

There is no dispute that the authors of the subject emails were employees or agents of Brulant. The issue is whether the emails concern matters within the scope of their employment.

**NOT FOR PUBLICATION**

Brulant asserts that these people were not involved with the "technical side of the website until after the work to implement and launch the upgraded website was completed." Brulant's Br. at 19 (ECF No. 87-1). In other words, they were not the programmers who built the initial product, so their emails about the state of the website are inadmissible. The Court disagrees and addresses the individuals' roles and the subject emails.

Scott Young is identified in his emails as "Managing Partner" for Rosetta, a company that recently acquired Brulant. In his deposition, Scott Young says that he was a partner at Brulant and his role was "to generate business" and to "support that clients that [he] generate[s] business for." Young Deposition at 9, Ex. H, Coleman Cert. Scott Young signed the key contracts at issue in this case on behalf of Brulant, including the Master Services Agreement and the 2008 SOW concerning the website upgrade. *See* Ex. H, Coleman Cert.; Ex. A, Drasco Decl. The contents of the subject email express his concerns about the status of the upgraded website:

> These are issues that we (campmor and Rosetta) should have seen during testing. I was incredibly surprised how bad it was when I spent time on the site. Between us guys, I am pretty embarrassed on the quality of the site that we created for them. DJ has very valid points and I suspect that his business will increase significantly when they are fixed.

Email dated April 29, 2009, Ex. G, Coleman Cert.

> I know we have talked about this quite a bit, but this is totally unacceptable for Rosetta to have a site that has this many quality issues. Should we put together a SWAT team on this that includes Shiner, Manuel, or Ian to get this straightened out? I think that both you and I agree that our site and coding issues is the deep rooted problem here. I have spent quite a bit of time on the site lately and the issues are clearly there and they are clearly issues that we have caused. We have never had a site go live for a client that was this bad. Time just keeps passing and we are only making small incremental changes. Should we involve Brad on this one at all? I am concerned that DJ will get so frustrated that he will drop a law suit on us.

Email dated May 7, 2009, Ex. G, Coleman Cert. These emails clearly speak on matters within the scope of Mr. Young's employment at Brulant. He is overseeing the project, discussing

**NOT FOR PUBLICATION**

staffing and client relations. *See, e.g., Tisa,* 343 F. App'x at 798 (declarant's remarks stemmed directly from his scope of employment where he "provided controlling advice on programming, imaging, and hiring of on-air talent").

Dave Fazekas is identified in a deposition as a project principal or project manager that was assigned to the Campmor project and "work[ed] with [the president of Campmor] at a high business level." Booth Deposition at 103-104, Ex. H, Drasco Decl. His email dated April 29, 2009 says:

> Scott—between you and I, and I think you've come to know me well enough that I am not someone who likes to form opinions, but I am shocked that we released anything of this nature. Work that we are having to do was either completely overlooked, not tested, or there was a thought of just throwing something out there and catching up afterwards. I haven't spent the energy trying to figure out why we're at this point, just what to fix.

Email dated April 29, 2009, Ex. G, Coleman Cert. Similar to Mr. Young's email, Mr. Fazekas is expressing alarm about the upgraded website; this is within the scope of his employment as a project manager.

The last two emails challenged are written by Chris Boggs, Brulant's director of search engine optimization ("SEO"). The emails give updates about the search engine optimization status of the website and how that is being affected by other technical issues:

> Campmor issues follow up: organic traffic and conversions are down, and we do have some visibility problems on an aggregate level. We are having some issues with keywords that are no longer addressed on the site due to removal and non-replacement of some old pages….

Email dated May 14, 2009, Ex. G, Coleman Cert.

> We have outlined most of the technical issues including the one discussed by Stephan below. We are working together with Dave and Norm to ensure all of our recommendations get their way into the priority list, but frankly there are way more serious usability/site content issues that are preventing the organic conversions, rather than a great drop in visibility.

**NOT FOR PUBLICATION**

Email dated May 20, 2009, Ex. G, Coleman Cert. These emails are within the scope of Mr.

Boggs' employment because they address the technicalities of SEO work and discuss how the

SEO is being affected by other issues in website.

      Brulant's motion is denied.

**VIII.**   **Motion to enforce the limitation of liability clause**

      Brulant moves to preclude Campmor from introducing evidence of alleged lost profits on

the grounds that the limitation of liability clause in the Master Services Agreements bars the lost

profits claim. ECF No. 85-1. This issue has already been decided by the Court in its July, 12,

2011 summary judgment opinion:

> …the Court finds that there is evidence in the record from which a jury could find
> that Brulant was reckless. . . . The Court will not dismiss Campmor's lost profits
> claim based on the limitation of liability clause in the MSA.

Op. at 11 (ECF No. 50). To attempt to relitigate an issue that the Court has already decided in its

summary judgment opinion through a pretrial in limine motion is improper. The Court cautions

that "[t]he defendant should not use a motion in limine as a motion for reconsideration." *EEOC*

*v. Schott North America, Inc.*, No. 06-1246, 2009 WL 310897, at *2 (M.D. Pa. Feb. 5, 2009).

      Brulant's motion is denied.

**IX.**   **Motion to exclude references in the Final Pretrial Order**

      Brulant moves to strike certain references from the Final Pretrial Order. A motion to

amend the final pretrial order is governed by Federal Rule of Procedure 16(e), which states that

"[t]he court may modify the order issued after a final pretrial conference only to prevent manifest

injustice." Fed. R. Civ. 16(e). Courts balance various factors when considering a Rule 16(e)

modification, including: (1) prejudice or surprise to the nonmoving party; (2) ability of that party

to cure the prejudice; (3) extent to which waiver of the rule would disrupt the orderly and

16

**NOT FOR PUBLICATION**

efficient trial of the case; (4) bad faith or willfulness on party of the movant; and (5) whether the move to amend is a matter of a new strategy or tactic. *Scopia Mortg. Corp. v. Greentree Mortg. Co.*, 184 F.R.D. 526, 528-29 (D.N.J. 1998) (citing *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir. 1977); *Fashauer v. New Jersey Transit Rail Operations, Inc.*, 57 F.3d 1269, 1287 (3d Cir. 1995)). "It is well established the departure from or adherence to the pretrial order is a matter peculiarly within the discretion of the trial judge." *Beissel v. Pittsburgh and Lake Erie R. Co.*, 801 F.2d 143, 150 (3d Cir. 1986).

Here, the Court observes that Brulant preserved its right to make the following motions in the Final Pretrial Order, so the surprise or prejudice to the nonmoving party is minimal. Final Pretrial Order at 3-4. The motions do not signal a new strategy or tactic that Defendant is trying on the eve of trial; they speak to long-standing issues in dispute between the parties. *See* Tr. of Hearing Before Magistrate Judge on Sept. 12, 2012 (ECF No. 99). The Court turns to the substance of these motions.

### A.  Knowing misrepresentations

Brulant moves to strike Campmor's references to Brulant making alleged knowing misrepresentations during the course of their business relationship. Brulant maintains that the Court has already ruled in its summary judgment opinion that Brulant did not engage in any knowing misrepresentations. Brulant's Br. at 5-6 (ECF No. 84-1). Brulant challenges the following specific sections of the Final Pretrial Order:

- In Campmor's Disputed Facts section, it states that "[a]t key points during the relationship, Rosetta made material misrepresentations to Campmor about the level of completion of the functionality and SEO work Rosetta had performed." Final Pretrial Order at 13, ¶ 47.

- In the Single List of Legal Issues, Campmor includes:

**NOT FOR PUBLICATION**

> 4. Whether or not Defendant knowingly or negligently misrepresented its capability to perform the work identified in each of the SOWs.

> 5. Whether or not Defendant knowingly or negligently misrepresented to Campmor the status or level of completion of the work performed on Campmor's 5.6.1 and/or 6.0 websites, and if Defendant did so in order to induce Campmor's continued payment to Defendant.

> …

> 10. Whether Defendant knew, or should have known, that certain representations made to Campmor were false when they were made.

Final Pretrial Order at 36-37, ¶¶ 4-5, 10.

The Court granted summary judgment for Brulant on the fraud claims. Op. at 13-20 (ECF No. 50). The Court concluded there was no evidence that Brulant *knowingly* misrepresented material facts. *Id.* at 15 ("There is no evidence that Brulant knew these statements were false when they were made."). But Campmor's claim of negligent misrepresentation is going to trial. *Id.* at 20 (as the moving party, "Brulant has failed to address Campmor's clam for negligent misrepresentation"). Under Ohio law, negligent misrepresentation occurs when:

> [o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Barr v. Lauer*, No. CV-549906, 2007 WL 117502, *3 (Ohio Ct. App. 2007) (quoting *Delman v. Cleveland Heights* 41 Ohio St. 3d 1, 4 (Ohio 1989)) (emphasis added). "[S]tatements which do not rise to the level of fraud may nonetheless constitute actionable misrepresentations if they are based in good faith yet still 'coupled with negligence.'" *Id.* (quoting *Marasco v. Hopewell*, No. 03AP-1081, 2004 WL 2895973 (Ohio Ct. App. 2004)). Under this legal standard, Campmor may bring evidence of alleged *negligent* misrepresentation; such misrepresentations "do not rise to the

18

**NOT FOR PUBLICATION**

level of fraud." Such is consistent with the Court's summary judgment opinion. Campmor may

not seek to present evidence of *knowing* misrepresentation.

Brulant's motion is granted.

### B.  Punitive damages and attorney's fees

Brulant argues that portions of the Final Pretrial Order that make references to Plaintiff's

claims for recovery of punitive damages and attorney's fees should be stricken because

Palintiff's remaining claims do not give rise to either under Ohio Law. Brulant's Br. at 7-11

(ECF No. 84-1).

The Ohio law on punitive damages provides:

> punitive damages are recoverable for a tort committed in connection with, but
> independently of, a breach of contract, the allowance of the punitive damages
> being for the tort, and not for the breach of the contract. However, the breach
> must be attended by some intentional wrong or gross negligence which amounts
> to an independent tort, and must be accompanied by the attendant aggravating
> circumstances of wanton, <u>reckless</u>, malicious, or oppressive conduct that
> ordinarily gives rise to punitive damages.

*R & H Trucking, Inc. v. Occidental Fire & Cas. Co.*, 2 Ohio App. 3d 269, 271-72 (Ohio Ct. App.

1981) (citations omitted) (emphasis added). The key to the recovery of punitive damages in Ohio

is a finding of malice; actual malice can be inferred from conduct and surrounding circumstances

that may be characterized as reckless, wanton, willful or gross. *Burns v. Prudential Sec.*, 167

Ohio App. 3d 809, 842-43 (Ohio Ct. App. 2006). In sum, Ohio law provides that "reckless"

behavior may be a basis for awarding punitive damages. The Court's summary judgment opinion

concluded that "there is evidence in the record from which a jury could find that Brulant was

reckless." Op. at 11 (ECF No. 50). It follows that Campmor's claim for punitive damages is not

barred by Ohio law. Whether Brulant was reckless to a point that malice could be inferred is a

question for the jury.

**NOT FOR PUBLICATION**

Brulant also objects on the grounds that Campmor has not "identif[ied] any tort which was committed independently of the breach of contract." Brulant's Br. at 7 (ECF No. 84-1). While it is true that punitive damages are only recoverable when "the conduct constituting the breach is also a tort," Ohio courts do not require plaintiffs to plead the tort as a separate claim in order to receive punitive damages. *See Stockdale*, 153 Ohio App. 3d at 738 ("plaintiffs are not required to plead the related but independent tort") (citations omitted); *Burns*, 167 Ohio App. 3d at 842 ("Under modern rules of pleading, an action for tort may be combined with and arise from the same operative facts as a breach-of-contract action.").

Ohio courts allow the aggrieved party to recover attorneys' fee when punitive damages are awarded. *See Zoppo v. Homestead Ins. Co.*, 71 Ohio St. 3d 552, 558 (Ohio 1994); *Columbus Finance, Inc. v. Howard*, 42 Ohio St. 2d 178, 183 (Ohio 1975). Because Campmor may be entitled to punitive damages, its claim for attorneys' fees is not barred.

Brulant's motion is denied.

**C.  Deposition testimony of nonparty witnesses**

Brulant moves to bar Plaintiffs from reading portions of non-party witnesses' depositions at trial, which Plaintiff indicates that it intends to do in the Final Pretrial Order. Final Pretrial Order at 34. The deponents are two IBM employees: Lori Sakowitz and Susan Ruffalo. Brulant's Br. at 12-13 (ECF No. 84-1). Brulant's objection is based on Federal Rule of Civil Procedure 32(a)(4), which governs when a deposition may be used in court if a witness is unavailable to testify. Fed. R. Civ. P. 32(a)(4). *See, e.g., Leff v. First Horizon Home Loan*, No. 05-3648, 2007 WL 2572362, at *6 (D.N.J. Sept. 4, 2007) ("It has long been established that the deposition of a witness is admissible 'if the court finds…that the witness is unable to attend or testify because of age, illness infirmity or imprisonment.'") (citations omitted); *In re Jacoby Airplane Crash*, No.

20

NOT FOR PUBLICATION

99-6073, 2007 WL 559801, at *6 (D.N.J. Feb. 14, 2007) (deposition may be used where witness is located more than 100 miles from the place of trial).

Brulant's objection is premature. Lori Sakowitz and Susan Ruffalo are both on the list of Plaintiff's witnesses in the Final Pretrial Order. *See* Final Pretrial Order at 31. Campmor has not indicated that these two individuals will not be present at trial. Opp'n Br. at 9 (ECF No. 95). Federal Rule of Civil Procedure 32(a) provides that depositions may be used at trial if certain conditions are fulfilled. Fed. R. Civ. P. 32(a). Campmor asserts that whether it meets those conditions should be determined at trial. Because Brulant's stab at showing Campmor fails to meet one of those conditions misses the mark, the Court agrees with Campmor.

Brulant's motion to bar the depositions of Ms. Sackowitz and Ms. Ruffalo is denied at this time.

**CAMPMOR'S MOTIONS**

**I.      Motion to exclude testimony and argument concerning Campmor's service of process from trial**

To understand this motion, the Court begins by reviewing the procedural history of this case. Campmor first filed suit against Brulant in Superior Court of New Jersey, Bergen County Law Division, on July 30, 2009. An amended complaint was filed on September 21, 2009. Ex. A, Notice of Removal (ECF No. 1). Brulant was served on October 20, 2009. *Id.*

The case was removed to federal court on October 27, 2009. Ex. 1. Campmor filed a second amended complaint on April 26, 2010. ECF No. 16. Brulant filed an answer on May 17, 2010, and also alleged two counterclaims against Campmor: (1) breach of contract and (2) unjust enrichment.  Answer, Affirmative Defenses & Counterclaims ¶¶ 157-166 (ECF No. 21) ("Counterclaims"). The unjust enrichment claim alleges that Campmor owes Brulant over $316,000 in unpaid invoices for work that Brulant has completed. *Id.* ¶ 144. Brulant alleges that

**NOT FOR PUBLICATION**

the parties discussed the unpaid invoices "[t]hrough the spring and summer of 2009." *Id.* ¶ 151. But "[u]nbeknownst to Brulant," Campmor filed its original complaint in state court on July 30, 2009, and that complaint was never served on Brulant. *Id.* ¶ 152. Brulant further alleges that even after Campmor filed suit in state court, Campmor continued to hold discussions with Brulant and to accept services from Brulant, with no mention of the lawsuit. *Id.* ¶¶ 154-156. Campmor has never responded to these counterclaims.

Campmor moves in limine to exclude any testimony and argument concerning the lack of service of the initial lawsuit filed in state court. Campmor's Br. at 1-3 (ECF No. 89-1). Campmor argues that this procedural detail has no legal relevance and would confuse the jury. *Id.* Brulant points out that because Campmor never filed any responsive pleading to Brulant's counterclaims, Campmor is precluded from raising any substantive defenses at trial. Brulant's Br. at 10 n.4 (ECF No. 91).

First, the Court addresses the fact that Campmor never filed a responsive pleading to Brulant's counterclaims. Under Federal Rule of Civil Procedure 12(a)(1)(B), Campmor should have filed a responsive pleading within 21 days after being served. Federal Rule of Civil Procedure 8(b)(6) further provides that "[a]n allegation…is deemed admitted if a responsive pleading is required and the allegation is not denied." *See Estate of Kean v. U.S. ex rel. Nat'l Park Serv.*, No. 1998-176, 2008 WL 3460299, at *5 (D.V.I. Aug. 5, 2008); *I.H. ex rel. D.S. v. Cumberland Valley School Dist.*, No. 11-574, 2012 WL 2979038, at *1 (M.D. Pa. July 20, 2012). But in exceptional circumstances, courts have declined to admit the allegations in a counterclaim due to failure to respond. *See Certain Underwriters at Lloyd's of London v. Alesi*, 843 F. Supp. 2d 517, 533-34 (D.N.J. 2011) ("given the confusion over the filing of the amended answer and its contents, the Court will not deem the allegations in the counterclaim admitted"); *Continental*

22

**NOT FOR PUBLICATION**

*Casualty Co. v. Diversified Industries, Inc.*, 884 F. Supp. 937, 962-65 (E.D. Pa. 1995) (though parties should have responded to counterclaims, "the court has great interest in moving this litigation past the preliminary motions stage" and "keep this litigation moving forward"). This case commenced in 2009. Until now, Brulant has not previously raised the issue of Campmor's non-response, nor has Brulant moved for default judgment. Like the court in *Continental Casualty*, this Court "has ruled on various motions, and has spent many hours getting this case on schedule for trial." 884 F. Supp. at 963. Trial date is less than one month away, and the Final Pretrial Order was filed in September 2012. ECF No. 80. Federal Rule of Civil Procedure 16(e) provides that the pretrial order "shall control the subsequent course of action unless modified by subsequent order." The Third Circuit has stated that the pretrial order "supersedes the pleadings and directs the future course of the action." *Price v. Inland Oil Co.*, 646 F.2d 90, 95 (3d Cir. 1981). The Court recognizes that Campmor's failure to file a responsive pleading was improper, but at this late stage the Court will not bar Campmor from raising any substantive defenses at trial.

Second, Campmor argues that the dates of when it filed its initial complaint and when it served Brulant are irrelevant and unfairly prejudicial. The Final Pretrial Order indicates the Brulant will use these facts in aid of its unjust enrichment claim. Brulant alleges that between July 2009 (when the complaint was filed) and October 2009 (when Brulant was served), Brulant continued to provide services that Campmor "had no intention of paying for." Final Pretrial Order ¶¶ 30-31. There is no dispute that service was timely under the state procedure. N.J. Stat. Ann. § 1:13-7 (allowing four months for service). The Court agrees with Campmor that there is no legal requirement for a plaintiff to inform a defendant that a complaint has been filed *before* the statutory deadline for service of process; such a thing would be absurd. The fact that

23

**NOT FOR PUBLICATION**

Campmor complied with state procedure is irrelevant to Brulant's unjust enrichment claim. The jury should be spared a lecture on the finer points of civil procedure.

Campmor's motion is granted.

## CONCLUSION

The Court makes the following rulings:

1)  Brulant's motion to limit Campmor's claims to the website upgrade and SEO work and to preclude all facts and issues related to Brulant's work from 2006 to 2008 is denied. The specific statements contained in the Requests for Admissions dated March 30, 2010, which Campmor never responded to, are deemed admitted.

2)  Brulant's motion to bar Campmor from referring to "best practice standards" is denied.

3)  Brulant's motion to exclude any extra-contractual information is granted in part and denied in part. Campmor may not introduce other documents or information to augment Brulant's contractual obligations, but Campmor may introduce extrinsic evidence for the purpose of proving negligent misrepresentation.

4)  Brulant's motion to bar lay testimony of Campmor managers and employees regarding Brulant's performance under the contracts is denied.

5)  Brulant's motion to bar testimony of Red Baritone and Net Concepts employees is denied in part and granted in part. These witnesses may give testimony on technical subject matters so long as the testimony is based on their personal knowledge and experience. They may not give speculative opinions of a technical nature that are not based on their personal experience.

6)  Brulant's motion to exclude customer feedback emails is denied.

7)  Brulant's motion to exclude internal Brulant emails is denied.

**NOT FOR PUBLICATION**

8)  Brulant's motion to enforce the limitation of liability clause is denied.

9)  Brulant's motion to strike references in the Final Pretrial Order about Brulant making

     knowing misrepresentations is granted.

10) Brulant's motion to strike portions of the Final Pretrial Order that refer to Campmor's claims

     for punitive damages and attorneys' fees is denied.

11) Brulant's motion to bar portions of Lori Sakowtiz's and Susan Ruffalo's depositions is

     denied.

12) Campmor's motion to exclude testimony and argument concerning Campmor's service of

     process from trial is granted.

The accompanying Order will be entered.


April 30, 2013


                                                       **/s/ William H. Walls**

                                                       United States Senior District Judge