**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CAMPMOR, INC., <br><br> *Plaintiff,* <br><br> - *vs.* - <br><br> BRULANT, LLC <br><br> *Defendant.* <br> ---------------------------------- <br> BRULANT, LLC, <br><br> *Counterclaim Plaintiff,* <br><br> - *vs.* - <br><br> CAMPMOR, INC., <br><br> *Counterclaim Defendant.* | CIVIL ACTION NO. <br><br> 19-CV-5465 (WHW) |

---

**PLAINTIFF'S TRIAL MEMORANDUM**

---

Ronald D. Coleman (RC 3875)
David Kuehn (DK 4560) (*Pro Hac Vice*)
55 Harristown Road
Glen Rock, NJ  07452
(201) 612-4444
rcoleman@goetzfitz.com
dkuehn@goetzfitz.com

## PRELIMINARY STATEMENT

Plaintiff Campmor, Inc. ("Campmor"), pursuant to Section 12(A) of the Final Pretrial Order, submits this trial brief addressing what it understands to be the remaining disputed issued of law in this litigation.  This submission does not address any issues of law that this Court has already decided in (i) Defendant's Motion to Dismiss, (ii) Defendant's Motion for Summary Judgment and (iii) the parties' respective Motions in Limine or in any other aspect of the pretrial proceedings in this matter.  Included within these decided issues – but excluded from this brief – are, *inter alia*, (i) Campmor's right to seek punitive damages and attorneys' fees, (ii) the admissibility of Campmor's consumer emails, (iii) the admissibility of Brulant's internal emails; (iv) Campmor's ability to introduce evidence of, and recover, lost profits in this litigation; and (v) the sufficiency of Campmor's expert witness report and testimony to support Campmor's lost profits damages.

## LEGAL ARGUMENT

### I.   THE LIMITATION OF LIABILITY LANGUAGE IN BRULANT'S CONTRACTS IS UNENFORCEABLE OR INAPPLICABLE.[1]

#### A.  **The limitation of liability provisions are unenforceable as a matter of law because they amount to penalties under the facts of this case.**

Defendant places great stock on the boilerplate language in its contracts barring any recovery for damages arising from breach of those contracts to the amount actually paid by Campmor for the services to be rendered under the agreement – indeed, to the specific "line items" supposedly identifiable as being "the breaches" in the complex, multifaceted project that is the subject of this litigation.  As demonstrated below, however, Ohio cases have rejected the

---

[1] This issue was included as Issues 15 and 16 in the Court's September 28, 2012 Final Pretrial Order's list of legal issues [p. 37].

1

application of such clauses and deemed them unenforceable penalties akin to unreasonable liquidated damages provisions where their effect would be to deprive the victim of a contractual breach of an appropriate recovery under the law of contract.

"Whether a stipulated amount in a damages clause constitutes liquidated damages or should be considered as a penalty is a question of law for the court to decide." *Foliano v. Dussault Moving, Inc*., 2003-Ohio-4408 (Ohio Ct. App. Aug. 21, 2003). "[R]easonable compensation for actual damages is the legitimate of [a] liquidated damages provision and where the amount is manifestly inequitable and unrealistic, courts will ordinarily regard it as a penalty." *Samson Sales, Inc. v. Honeywell, Inc.*, 12 Ohio St.3d 27, 28 (1984).   A damage-cap may be void as a penalty under Ohio law.  *Zurich-Am. Ins. Co. v. Citadel Alarm*, 50499, 1986 WL 5291 (Ohio Ct. App. May 8, 1986).   A provision limiting damages is enforceable under Ohio law only if three conditions are met: (i) the resulting damages would be uncertain as to amount and difficult to prove, (ii) the stated damages are not manifestly unreasonable and disproportionate to the consideration paid to the breaching party and the reasonably foreseeable possible damages resulting from a breach and (iii) the contract is consistent with the conclusion that the parties intended the damages in the amount stated in the contract should be the recovery for a breach thereof.  *Id.* at 28-29.  *See also*, *Braden v. Honeywell, Inc*., 8 F. Supp. 2d 724, 729 (S.D. Ohio 1998) ("to enforce the provisions limiting damages or liability would render the contract manifestly unconscionable and unreasonable"); *State Auto. Ins. Co. v. Sonitrol of Cleveland, Inc.*, 54186, 1987 WL 25749 (Ohio Ct. App. Dec. 3, 1987) (damage cap so manifestly disproportionate to losses incurred as to render enforcement unconscionable).

In applying *Samson*, the question of whether damages are, per (i) of the test, amenable to determination is a *post facto*, i.e., a trial and evidentiary question.  It is not a matter of whether or

not the parties would be able to guess in advance what the damages of breach would be. "If the actual damage sustained would be wholly uncertain and incapable or very difficult of being ascertained, except by conjecture, the courts are inclined to look to the measure of damages fixed by the contract. But where the actual damage can be correctly ascertained by the application of a proper measure of damages to the actual facts, the courts are inclined to treat the provision as a penalty and leave the parties to their proof of actual damages suffered. Restatement, Contracts, Sec. 339 . . ." *Steffen v. United States*, 213 F.2d 266, 270 (6th Cir. 1954). In contrast, the second prong of the test, concerning foreseeability – whether the contractual limitation is "manifestly unreasonable and disproportionate to the consideration paid to the breaching party and the reasonably foreseeable possible damages resulting from a breach" – asks the question of whether the parties would, as a matter of law, enter into a contract limiting damages to an amount that is out of proportion to the potential loss in the event of breach. *See also*, *Lake Ridge Acad. v. Carney*, 66 Ohio St. 3d 376, 382 (1993) (when stipulated damages provision is challenged, court must "examine it in light of what the parties knew at the time the contract was formed and in light of an estimate of the actual damages caused by the breach").

*Steffen*, *Samson* and their progeny are highly instructive here. In *Samson*, the plaintiff business retained the defendant, an alarm company, to install and monitor an alarm system. Under the contract, if an alarm were triggered, the defendant was obligated to notify the police and make reasonable efforts to notify the plaintiff. The plaintiff's business was in fact burglarized and the alarm system failed. The defendant sought to limit its damages to $50 pursuant to the contract between the parties which, like the limitation of damages clause relied on by defendant, limited damages to "the value of the service, maintenance and installation of the system," and provided further that "[i]n the event of loss or damage to Subscriber resulting

3

by reason of failure of the performance of such service or the failure of the system to properly operate, Company's liability, if any, shall be limited to the sum of Fifty Dollars…" *Id*. at 28.

Applying the above factors, the Ohio Supreme Court held this provision unenforceable as a matter of law, making a number of key findings that are directly applicable to the claims here. First, the court held that liquidated damages were inappropriate because the magnitude of damages in the event of a breach were readily ascertainable "as the damages in a multitude of other conceivable situations involving negligence or breach of contract." *Id*.

Secondly, and significantly for its application to Campmor's claim, the *Samson* court found that the contractual limitation on damages relied on by the defendant was unenforceable because applying it would result in a "manifestly disproportionate" limitation of damages – i.e., that, as is the case here, the amount paid by the plaintiff for the service was trivial compared to the reasonably foreseeable damages that could result from the defendant's breach or related negligence.

Finally, with respect to the last point – negligence – the Samson court also found the clause unenforceable on the ground that it was inconceivable that the parties intended such a limitation of damages to apply in the event of a negligent breach of the contract. *Id*. S

Under *Samson* the failure of damages cap with respect to a single factor renders the provision unenforceable as a matter of law. And here, as in *Samson*, the limitation of liability provision fails to meet any of the three elements. First, Campmor's damages resulting from Brulant's breach were and are easily ascertainable at trial. They include the liquidated amounts it paid to Brulant for what turned out to be defective work plus that paid to third parties to correct these defects in addition to its lost profits, which will be proved through both factual and expert testimony.

4

Second, limiting Campmor's recovery to "the charges paid [to Brulant] for the portion of services or work giving rise to the liability" – i.e., the specific "line item" or atomized task that, wrenched from the context of the entire project, is theoretically to be held up as "the cause" of Campmor's losses – which is the result for which Brulant contends [Final Pretrial Order, p. 16, ¶ 20], would amount to a damage award for breach of contract that would be manifestly disproportionate compared to the more than $1.5 million Campmor paid for the 6.0 upgrade to its website and the corresponding SEO work [Final Pretrial Order, p. 14, ¶ 1], much less Campmor's lost profits of more than $5,400,000.00 resulting from defendant's breach  [Final Pretrial Order, p. 14, ¶ 3].

Third, viewing the contractual relationship as a whole (including the 6.0 SOW), pursuant to which Brulant obligated itself to provide Campmor a website with, *inter alia* –

    a.    a best practices configuration with all major components functioning properly;

    b.    a site and user experience that compared favorably to market leaders and Campmor's closest identified competitors;

    c.     maximized site responsiveness; and

    d.    Preserved SEO scoring;

– it is inconceivable that both parties intended to limit Campmor to recovery a fraction of its costs, and no other resulting damages, for a website that had none of the elements noted above, let alone the myriad additional defects Campmor discovered in the months after the 6.0 site was launched.

B.    **The limitation of liability provisions do not apply to Campmor's negligent misrepresentation claims.**[2]

The limitation of liability provision relied on by defendant cannot, as a matter of law, apply to Campmor's claim for negligent misrepresentation because in order to limit recovery for future tortious conduct, such a clause must state "exactly what type of liability" is being excluded "in clear and unambiguous terms." *Hague v. Summit Acres Skilled Nursing & Rehab.*, 2011 WL 55545386 at 4 (7th Dist.).    Here the purported limitations clauses fail to meet this standard.

By its own terms, the MSA limits Brulant's liability "relating to services **rendered under this Agreement**" [Brulant Trial Exhibit 1, p. 2] (emphasis added).  Campmor's negligent misrepresentation claims, however, involve both pre-contractual representations made by Brulant relating to its ability perform the work and extra-contractual representations made by Brulant regarding the level of completion and/or quality of the work actually performed during the relationship between the parties.  Campmor contends that these representations were made with the intent to influence Campmor into (i) entering into a contractual relationship with defendant; (ii) continuing that relationship, including continuing making payments on invoices; and (iii) launching the 6.0 site despite crippling problems and incomplete work that was completely inconsistent with those representations.  Because defendant's misrepresentations were not and are not the type of acts identified by the MSA as included within the limitation of liability, any limitation of liability in the MSA does not apply to those actions.

Even considering the language in the light most favorable to defendant, the limitation of liability provision is ambiguous on whether its scope includes a negligent misrepresentation claim.  Limitation of liability clauses are strictly construed under Ohio law, however, and

---

[2] This Court has already (twice) ruled that the limitation of liability provision does not apply to Campmor's reckless breach of contract claim.  It is therefore not addressed herein.

therefore, must be construed against defendant as the party seeking to avoid liability.  *See*, *Geczi v. Lifetime Fitness*, 973 N.E.2d 801, 804 (10th Dist. 2012) ("the law does not favor releases from liability for future tortious conduct, which will be narrowly construed."); *Bahamas Agr. Industries, Ltd. v. Riley Stoker Corp.*, 526 F.2d 1174, 1179 (6th Cir. 1975) ("Under Ohio law provisions that purport to limit negligence liability are strictly construed by the courts.").  Had defendant wanted to unequivocally include any negligent misrepresentations into the limitation of liability provision in the MSA, it could have (and should have) expressly included that cause of action therein, such as the provision at issue in *Berger v. American Building Inspection, Inc.*, 1997 WL 269318 (11th Dist.).  Only then could Campmor have been said to have had the opportunity to assess whether it wished to enter into a contract containing a license for negligent misrepresentations that could essentially wreck its online business.

Because the limitation of liability provision of the MSA does not clearly and unequivocally include pre-contract or extra-contractual negligent misrepresentations, Brulant, as a matter of law, should be prevented from hiding behind that provision in an attempt to avoid liability for those actions.

C.      **The limitation of liability provisions do not preclude Campmor's evidence of consequential damages for breach of warranty from reaching the jury.**

Where an exclusive remedy in a warranty fails of its essential purpose, a disclaimer of consequential damages provision will be set aside and the claimant may seek all otherwise recoverable damages.  *See*, *Goddard v. General Motors Corp.*, 60 Ohio St.2d 41, 47-48, 396 N.E.2d 761, 765-66 (1979).  "Under commercial law, a limitation of remedy fails its essential purpose of it deprives the purchaser of the substantial value of its bargain."  *Johnson v. Montsanto Co.*, 2002 WL 2030889 at 5.  Whether or not a warranty remedy fails its essential

7

purpose is a question of fact to be determined by the jury. *Boyas Excavating, Inc. v. Powerscreen of Ohio, Inc.*, 139 Ohio App.3d 201, 211, 743 N.E.2d 464, 471 (8th Dist. 2000).

There is no legal basis for Brulant's unsupported contention (reflected in its proffered jury instructions) that the limitation of liability provision in the MSA precludes any recovery of consequential damages by Campmor. Here, the remedy provided under the MSA provides that Brulant would correct any defects in is performance, upon notice, within 30 days. [Brulant Trial Exhibit 1]. There is myriad evidence, including the internal emails Brulant has twice sought, unsuccessfully, to keep from being introduced at trial, demonstrating that the vast majority of Brulant's defects with Campmor's website were not corrected until several months later, if at all.

At a bare minimum, therefore, there is an issue of fact as to whether Brulant's failures in connection with its obligations under the warranty deprived Campmor of the substantial benefit of its bargain with Brulant. Therefore, whether or not Campmor is entitled to the full range of consequential damages on its breach of warranty claim must be determined by the jury.

## II.   THE QUANTUM OF CAMPMOR'S CONTRACTUAL DAMAGES IS A QUESTION FOR THE JURY.

Regardless of any limitation of liability provision, as a matter of Ohio law it is for the jury to determine the amount Campmor is entitled to recover. R.C. §2315.07 provides, "If by the verdict in a civil action tried to a jury any party in the action is entitled to recover money from an adverse party, the jury shall determine the amount of the recovery in its verdict." *See*, *Andrew v. Power Marketing Direct, Inc.*, 978 N.E.2d 974, (10th Dist. 2012); *Galayda v. Lake Hospital Systems, Inc.*, 71 Ohio St.3d 421, 644 N.E.2d 298 (1994).

### III.   THE LIMITATION OF LIABILITY CLAUSE IS AMBIGUOUS AND MUST BE INTERPRETED BY THE JURY IN LIGHT OF ALL THE FACTS.

Contractual language that is susceptible to two or more reasonable interpretations creates an ambiguity in the contract.  *Geczi v. Lifetime Fitness*, 973 N.E.2d 801, 806.  Such ambiguities raise questions of fact to be determined by a jury.  *Id*.

Here, there are two arguably[3] reasonable interpretations of the amount recoverable by Campmor under the limitation of liability provision, which states Brulant's liability is "limited to the charges paid to us for the portion of services or work giving rise to liability."  Brulant's proffered jury instructions make it clear Brulant interprets the provision as limiting Campmor's damages to only the amount paid by Campmor for each specific item of work found to be defective.  Campmor, however, contends the only reasonable interpretation of the provision is that Campmor is entitled to recover the amount of money it paid for the entirety of Brulant's work in connection with each SOW and/or scope of work found to be performed defectively.  Therefore, the interpretation of the contractual language in light of the facts elicited at trial concerning the contractual relationship must be determined by the jury.

### IV.   CAMPMOR'S PUNITIVE DAMAGES CLAIM IS NOT SUBJECT TO BIFURCATION.[4]

Bifurcation of this trial for any reason is a form relief not contemplated or addressed at all in the Final Pretrial Order entered by the Court on September 28, 2012.  That Order contains no

---

[3] As discussed above, any interpretation that the limitation of liability limits damages to the particular items of work performed, rather than the Statement of Work involved, gives rise to a court determination of whether the provision is a penalty and, therefore, unenforceable as a matter of law.

[4] This issue was not raised by Brulant prior to or within the Final Pretrial Order.  As discussed above, it is therefore Campmor's position that any such application has been waived.  However, Brulant has raised the issue in its jury instructions and, we expect, will raise it again before the Court.  Therefore, we will also address the merits of the claim herein.

mention whatsoever of the new legal issue being raised on the eve of trial by defendant, either in Section (2) governing anticipated motions, Section (10)'s "Miscellaneous" category or Section (15) entitled "Bifurcation."  This last section, in fact, states "The issue of liability and damages **SHALL NOT** be tried separately" (emphasis in the original).

In recent correspondence to the Court, defendant has sought to avoid the plain meaning of this provision of the Order by referring not to evidence of punitive damages as distinct from evidence of liability, but to what it calls Campmor's "punitive damages claims." If indeed this far-fetched suggestion is indeed what defendant means by its choice of words in today's letter, however, the Court is, again, already way ahead of defendant, for in its April 30th opinion denying defendant's motion in limine, the Court explicitly ruled that there are no "punitive damage claims" in this case, and that under Ohio law there is no reason there would be:

> Defendant also objects [to the introduction of evidence going to punitive damages] on the grounds that Campmor has not "identif[ied] any tort which was committed independently of the breach of contract." Brulant's Br. at 7 (ECF No. 84-1). While it is true that punitive damages are only recoverable when "the conduct constituting the breach is also a tort," Ohio courts do not require plaintiffs to plead the tort as a separate claim in order to receive punitive damages. *See Stockdale*, 153 Ohio App. 3d at 738 ("plaintiffs are not required to plead the related but independent tort") (citations omitted); *Burns*, 167 Ohio App. 3d at 842 ("Under modern rules of pleading, an action for tort may be combined with and arise from the same operative facts as a breach-of-contract action.").

In sum:  (a) Punitive damages are a species of damages, not a separate claim; (b) the parties have stipulated and the Court has ordered that "[t]he issue of liability and damages **SHALL NOT** be tried separately"; and (c) there is no ground whatsoever for permitting defendant second or third bite at the apple, seven days before the date of trial, to persuade the Court to keep relevant, admissible – even if damning – evidence concerning its conduct from the jury.

Indeed, while defendant's letter requests permission – if the Court is not moved by defendant's "advice" regarding Campmor's supposed refusal to "acknowledge" its position – for defendant to file "a motion to bifurcate" in these few remaining days before trial. But, again, such relief could only come by way of a motion to amend the Final Pretrial Order. And as the Court is well aware, that Order states as follows (emphasis in the original):

> AMENDMENTS TO THIS PRETRIAL ORDER SHALL NOT BE PERMITTED UNLESS THE COURT DETERMINES THAT MANIFEST INJUSTICE WOULD RESULT IF THE AMENDMENT IS DISALLOWED. . . .

Defendant, improperly attempting to bypass the Final Pretrial Order and engage the Court in the substantive issue, makes no attempt to even enunciate the existence of "manifest injustice" here. But considering the lateness of its submission, for which no excuse is even tendered, and the preclusive effect of the Final Pretrial Order, if anything the equities line up squarely against defendant on this issue. For this reason alone the Pretrial Order should govern.

Moreover, defendant's legal premise is entirely erroneous. Its sole citation to a federal case is to the utterly inapposite unpublished decision in *Wolpert v. Abbott Laboratories*, Civ. 08-4849 JBS, 2012 WL 1600437 (D.N.J. May 7, 2012). *Wolpert* is of no relevance, differing in almost every material respect from this case except that it concerns a motion by defendant to bifurcate. Unlike in this case, however, in *Wolpert* the plaintiff consented to the motion, which does not appear to have been made on the eve of trial but rather as part of an omnibus motion in limine such as this Court already entertained this spring.[5] The Court then applied not Ohio substantive law, as defendant urges here, to the procedural question but instead the substantive

---

[5] According to this Court's docket report per ECF, the decision cited by defendant, dated May 7, 2012, was on a motion in limine filed on March 9, 2012, which was itself made pursuant to the final pretrial order in that matter entered on December 30, 2011 – and which explicitly provided for a bifurcation motion as part of those motions in limine. *See*, 2011 WL 8491208 (D.N.J.) (Trial Filing). The trial began on May 15, 2013, over **two months** prior to the filing of the consent motion for bifurcation and over five months after the issue was incorporated into the final pretrial order.

law of New Jersey as the forum state in a diversity action.  And, ultimately, while Chief Judge Simandle in fact expressed serious questions in *Wolpert* as to the merits of the bifurcation application were questionable, he ultimately granted bifurcation "given the agreement between the parties that this is the best way to proceed, and the Court seeing no significant loss in efficiency in doing so." *Id.* at * 9.

Regardless of the underlying basis for bifurcation, a motion to bifurcate is a procedural one governed by Federal Rule of Civil Procedure 42. *Miller v. New Jersey Transit Authority Rail Operations*, 160 F.R.D. 37, 39 (D.N.J. 1995).[6]  Rule 42(a) allows a court to bifurcate a trial if it would be "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy."  But a court should not routinely order separate trials. *Keyes Fibre Co. v. Packaging Corp. of America*, 763 F.Supp. 374, 375 (N.D. Ill. 1991), *citing* Advisory Committee notes to Fed. R. Civ. P. 42.  Instead, the party seeking bifurcation must demonstrate that it will be prejudiced if the trial is not bifurcated. *Id.* at 40.  The party seeking bifurcation must also demonstrate that judicial economy would be served and that no party would be prejudiced if the application were granted. *Princeton Biochemicals Inc. v. Beckman Instructions Inc.*, 180 F.R.D. 254, 256 (D.N.J. 1997).  The application must be "resolved upon the specific circumstances of each case." *Id.*

Here, the circumstances weigh against, not for, bifurcation.  Separating the evidence supporting Campmor's punitive damages claim from the evidence supporting its breach of contract, reckless breach of contract and negligent misrepresentation claims would be impossible, for it is largely the same evidence.  Requiring Campmor to present its case to the

---

[6] In fact, the defendant moving for bifurcation in *Wolpert* relied, in its brief in support of the motion, almost entirely on this Court's decision in *Bowers v. Nat'l Collegiate Athletic Ass'n*, Civ. 97-2600 (JBS), 2008 WL 2235604 (D.N.J. May 29, 2008).  *Bowers* also involved a stipulation to bifurcation, presented in a motion made "pursuant to Rule 42(b), Fed.R.Civ.P." *Id.* at *1; *see* Document 159-1 Filed 03/09/12 in *Wolpert*.

jury twice would be a waste of the Court's and the parties' time and resources, an unnecessary burden on witnesses required for testimony relating to that evidence, and would unnecessarily delay the resolution of the trail for the Court, parties and the jury.  Under these circumstances, bifurcation is not warranted and any application for bifurcation should be denied.  *See*, *Keyes Fibre Co.*, *supra*, at 375 (denying a request to bifurcate, noting "separate trials would impose needless duplication of effort").

### V.      DEFENDANT HAS WAIVED CERTAIN AFFIRMATIVE DEFENSES.

It is well-settled that "a pretrial order when entered limits the issue for trial and in substance takes the place of the pleadings covered by the pretrial order."  *Weir v. Basista*, 340 F.2d 74, 85 (1965), *citing* Fed.R.Civ.P. 16.  Any legal theories or issues not included within the pretrial order are waived.  *See*, *DiNenno v. Lucky Fin Water Sports, LLC*, 837 F. Supp.2d 419, 423 (D.N.J. 2011); *Babby v. City of Wilmington Dept. of Police*, 614 F. Supp.2d 508, 510-11 (D. Del. 2009) (affirmative statute of limitations defense waived when not included in pretrial order).

Here, Brulant failed to include a number of affirmative defenses listed in its Answer and Counterclaims within the final pretrial order.  Specifically, there is no reference to the following affirmative defenses:

a.      Campmor fails to state a claim upon which relief can be granted;

b.      Campmor's claims are barred by the doctrine of waiver;

c.      Campmor's claims are barred by the doctrine of acquiescence;

d.      Campmor's claims are barred by the doctrine of laches;

e.      Campmor's claims are barred by the doctrine of unclean hands; and

f.      Campmor's claims are barred by its failure to mitigate its damages.

Because none of the above defenses were included within the Final Pretrial Order, they have all been waived and Brulant is precluded from offering any evidence in support of these defenses and the jury cannot be charged as to the law regarding any of them.

### VI.   DEFENDANT'S UNJUST ENRICHMENT COUNTERCLAIM IS BARRED AS A MATTER OF LAW.

The general rule under Ohio law is that "a party cannot seek dual relief under contract and quasi-contract theories." *HAD Enterprises v. Galloway*, 192 Ohio App.3rd 133, 140 (4th Dist. 2011). A claim for unjust enrichment requires some value be provided in the absence of a contractual relationship. *Dailey v. Craigmyle & Son Farms, L.L.C.*, 177 Ohio App.3d 439, 449 (4th Dist. 2008). Consequently, "the doctrine of unjust enrichment cannot apply when an express contract exists." *Bickham v, Standley*, 183 Ohio App.3d 422, 428 (3rd Dist. 2009).

Here there is be no dispute that the parties entered into an express contractual relationship. Defendant served a Request for Admissions [Dkt. 34-8] and, subsequently, made a motion in limine to declare those statements admitted as true by Campmor. This Court granted that motion and, in its April 23, 2013 Opinion [Dkt. 114], held, inter alia, the following facts as conclusively established:

1.   Campmor and Brulant entered into an agreement entitled "Master Services Agreement Terms and Conditions" in 2006;

2.   Campmor and Brulant entered into an agreement titled "Statement of Work for WebSphere Commerce 6.0 Upgrade and Redesign Project" on January 29, 2008; and

3.   Campmor and Brulant entered into an agreement titled "Search Engine Marketing Addendum 2008" on May 20, 2008.

Therefore, there no issue of fact exists as to a contractual relationship between the parties. Furthermore, there can be no dispute that defendant seeks the same damages under each counterclaim: the amount it contends Campmor owes for services purportedly provided and

14

invoiced by defendant but not paid by Campmor, as reflected in Paragraphs 55 and 71 of Brulant's Contested Facts in the Final Pretrial Order [pp. 29, 31].

Based on the foregoing, defendant's unjust enrichment claim must fail as a matter of law and no reference should be made to it during the trial and/or in any instruction of law to the jury.

## VII.   EVIDENTIARY ISSUES WITH BRULANT'S TRIAL EXHIBITS.

 Campmor anticipates that the following evidentiary issues may arise at trial:

1.   Inadmissible Evidence.

Defendant's Trial Exhibits 367 and 494 should be stricken from its exhibit list or otherwise excluded pursuant to this Court's order granting Campmor's motion in limine to preclude any reference to Campmor's initial pleadings or the passage of time between the filing of Campmor's initial complaint and the date Brulant was served with process.

2.   Unavailable Non-Party Witness Testimony and Exhibits

Campmor has served a subpoena one a non-party witness, David Fazekas.  As the Court is aware because of its receipt of his letter in response to that subpoena, however, Mr. Fazekas has no intention of complying with the subpoena.  He is well outside the Court's jurisdiction. For this reason, Campmor may seek to introduce at trial exhibits involving statements by Mr. Fazekas that would have otherwise been introduced through his testimony.

An unavailable witness' hearsay statement may be admissible "so long as it has adequate indicia of reliability – *i.e.*, falls within a 'firmly rooted hearsay exception' or 'bears particularized guarantees of trustworthiness.'"  *Crawford v. Washington*, 541 U.S. 36, 42 (2003).  Here, as a Brulant employee, Mr. Fazekas made statements through email correspondence, that, at the very least, were contemporaneous expressions of his

observations concerning the issues in this litigation.   He made them while he was performing work for or on behalf of Brulant (as an employee of Rosetta).   Moreover, they are arguably statements against interest, i.e., admissions of defendant's liability for Campmor's damages.   The exhibits therefore have indicia of trustworthiness and should be admitted even without the witness' testimony.

Non-party witness Chris Boggs has also been subpoenaed but, to date, has not responded to the subpoena and, upon information and belief, is outside the 100 mile radius within which his attendance can be compelled.   (He was served near Albany, NY, which is approximately 145 miles from the court).   To date, Brulant has not confirmed whether or not it still intends to call Mr. Boggs as a fact or expert witness in this case. Therefore, Campmor, if necessary, will seek the same relief, for the same grounds, as set forth above concerning Mr. Fazekas in connection with certain trial exhibits that would have otherwise been introduced through Mr. Boggs. Additionally, Campmor will seek to introduce testimony from Mr. Boggs from his deposition.

Non-party witness Doug Denton has been subpoenaed and is also outside the Court's jurisdiction.   Campmor therefore, if necessary, will make an application similar to the application involving Mr. Boggs above, involving trial exhibits that would otherwise be introduced through Mr. Denton and testimony from Mr. Denton's deposition transcript.

Non-party witnesses Susan Ruffalo and Lori Sakowitz have been subpoenaed and, through counsel, have indicated they will appear to testify.   In the event either or both become unavailable, however, Campmor will seek to introduce the deposition testimony selections it identified in the Final Pretrial Order.

16

3.     Potential Delay and Jury Confusion.

Evidentiary exhibits, even if containing some minimal probative value, are properly excluded under Rule 403 where the probative value substantially outweighs the risk of trial delay and jury confusion.  *Brooks v. Chrysler Corp.*, 786 F.2d 1191, 1198 (D.C.C. 1985).

Here, Campmor, which carries the burden of proof concerning the vast majority of claims in this trial, has identified 80 potential trial exhibits.  The defendant, in contrast, listed 494 trial exhibits, the vast majority of which have no or *de minimus* probative value.  By all indications, defendant's intention is to flood the record with marginally relevant or cumulative information and documentation to forestall the resolution of Campmor's claims, dilute the effect of relevant evidence or confuse the jury.  Such action would constitute "tactics of delay, oppression, harassment and massive expense to reduce plaintiff to exhaustive compliance" prohibited (and, in fact, identified as sanctionable conduct) by the United States Supreme Court.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 42, 111 S.Ct. 2123, 2131, 115 L.Ed.2d 27 (1991).  Campmor's concerns have been increased by Brulant's recent representations to the Court extending its expected trial duration to four weeks from the fifteen days the parties identified in the Final Pretrial Order.

Should Brulant engage in the type of conduct above at trial, Campmor will both object to admission of cumulative or otherwise marginal evidence and seek other appropriate relief.

GOETZ FITZPATRICK LLP


By:_____
        Ronald D. Coleman (RC 3875)

David Kuehn (DK 4560) (*Pro Hac Vice*)
55 Harristown Road
Glen Rock, NJ  07452
(201) 612-4444
rcoleman@goetzfitz.com
dkuehn@goetzfitz.com

May 21, 2013

18