# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

CAMPMOR, INC.

                    Plaintiff/Counter-Defendant,

    -vs-

BRULANT, LLC

                 Defendant/Counter-Plaintiff.

Civil Action No.: 2:09-cv-5465-WHW
Hon. William H. Walls, U.S.D.J.


Document Filed Electronically

---

## DEFENDANT, BRULANT, LLC'S TRIAL BRIEF

---

LUM, DRASCO & POSITAN LLC
103 Eisenhower Parkway
Roseland, New Jersey 07068-1049
(973) 403-9000
Attorneys for Defendant, Brulant, LLC

DENNIS J. DRASCO, ESQ.
  Of Counsel and On the Brief

ARTHUR M. OWENS, ESQ.
NOAH J. GOLD, ESQ.
  On the Brief

479588_1

## TABLE OF CONTENTS

**PAGE**

TABLE OF CITATIONS ................................................................................................ iii

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS & PROCEDURAL HISTORY ............................................ 2

LEGAL ARGUMENT ................................................................................................... 5

POINT I ........................................................................................................................ 5

    CAMPMOR FAILS TO ESTABLISH BREACH OF CONTRACT. ....................... 5

        A.     Ohio Breach of Contract Standard and Burden ..................................... 5

        B.     Limitation of Liability ............................................................................ 6

        C.     Recklessness Under Ohio Law ................................................................ 7

        C.     There is no Cause of Action for Reckless Breach of Contract in Ohio ... 9

        D.     Lost Profits ............................................................................................. 9

POINT II ...................................................................................................................... 14

    CAMPMOR CANNOT PREVAIL ON ITS BREACH OF WARRANTY
    CLAIM. ................................................................................................................ 14

POINT III ..................................................................................................................... 16

    UNDER OHIO LAW, A NEGLIGENT MISREPRESENTATION CLAIM
    CANNOT BE BASED UPON THE SUBJECT MATTER OF A CONTRACT
    BETWEEN THE PARTIES. .................................................................................. 16

        A.     Campmor's Negligent Misrepresentation Claim .................................. 16

        B.     Ohio Standard for Negligent Misrepresentation ................................... 16

        C.     Evidence Related Only to the Negligent Misrepresentation Claim should be
               Precluded. ............................................................................................. 18

POINT IV ..................................................................................................................... 19

    CAMPMOR WILL BE UNABLE TO OBTAIN PUNITIVE DAMAGES AT
    TRIAL. ................................................................................................................. 19

        A.     Ohio Standard for Punitive Damages and Attorneys' Fees. ................. 19

        B.     Mandatory Bifurcation of Campmor's Punitive Damage Claim ........... 21

POINT V ........................................................................................................................23

    THE ANTICIPATED EXPERT TESTIMONY OFFERED BY BRIAN COOPER
    ALONG WITH NON-EXPERTS SHOULD NOT BE GIVEN WEIGHT IN
    SUPPORT OF PLAINTIFF'S CLAIMS AND SHOULD BE SUBJECT TO A
    LIMITING INSTRUCTION. ..........................................................................................23

        A.     Expert Standard ...........................................................................................23
        B.     Campmor's SEO Experts' Methods are Unreliable. ..............................24
        C.     Non-Experts ................................................................................................26
              i.     Testimony from Campmor Managers and Employees .............................26
              ii.    Testimony from Red Baritone and Net Concepts Representatives ...........27

POINT VI .....................................................................................................................29

    DEFENDANT SHOULD PREVAIL ON ITS COUNTERCLAIM ...............................29

        A.     Breach of Contract .....................................................................................29
        B.     Unjust Enrichment .....................................................................................30

POINT VII ...................................................................................................................32

    MISCELLANEOUS TRIAL ISSUES ........................................................................32

        A.     Testimony of Erich Eyler ...........................................................................32

CONCLUSION .............................................................................................................33

479588_1

## TABLE OF CITATIONS

**PAGE**

**Cases**

425 Beecher, L.L.C. v. Unizan Bank, Natl. Assn., 186 Ohio App. 3d 214, 229-30 (10th Dist. 2010) ..................................................................................................................17, 18

Addis v. Howell 137 Ohio App.3d 54, 59, 738 N.E.2d 37, (2000) ......................................7

Bowers v. Nat'l Collegiate Athletic Ass'n, 564 F. Supp. 2d 322, 346 (D.N.J. 2008)..................23

Bros. v. Morrone-O'Keefe Dev. Co., 2006 WL 620894, at *5 (Ohio Ct. App. Mar. 9, 2006).....................................................................................................................16

Browning–Ferris Indus., Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 279 (1989) .......................21

Burns v. Rice, 157 Ohio App. 3d 620, 636 (2004)..................................................................6, 7

Cardinal Stone Co. v. Rival Mfg. Co., 669 F.2d 395, 396 (6th Cir.1982) ..................................6

City of Gahanna v. Eastgate Properties, Inc., 36 Ohio St. 3d 65, 68 (1988)...............................10

Comshare Inc. Sec. Litig., 183 F.3d 542, 550 (6th Cir. 1999) ...............................................7

Cooper & Pachell v. Haslage, 142 Ohio App. 3d 704, 707 (9th Dist. 2001) ..........................5, 29

Curran v. Vincent, 175 Ohio App. 3d 146, 152-53 (2007)....................................................20, 21

Daubert v. Merrell Dow Pharms., 509 U.S. 579, 592-93 (1993) ...........................................23, 24

Delman v. City of Cleveland Heights, 41 Ohio St. 3d 1, 4 (1989)................................................16

Dice v. Akron, Canton & Youngstown RR. Co. 155 Ohio St. 185, 191 (1951) .........................17

Doner v. Snapp, 98 Ohio App. 3d 597, 601 (2d Dist. 1994)................................................5, 29

Ed Schory & Sons, Inc. v. Soc. Natl. Bank, 75 Ohio St. 3d 433, (1996) ....................................17

Erie R.R. v. Tompkins, 304 U.S. 64 (1938) ......................................................................22

Ferritto v. Olde & Co., Inc., 62 Ohio App. 3d 582, 589, (1989)....................................................19

Flynn v. Fairview Village Retirement Community, Ltd., 132 Ohio St. 3d 199, 200-01 (2012) ....................................................................................................................22

Gasperini v. Ctr. for Humanities, 518 U.S. 415, 427 (1996).......................................................21

Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997) .................................................................24

Goddard v. Gen. Motors Corp., 60 Ohio St. 2d 41, 49 (1979) ..............................................14, 15

Habecker v. Clark Equip. Co., 36 F.3d 278 (3d Cir. 1994).........................................................24

Hambleton v. R.G. Barry Corp., 12 Ohio St. 3d 179, 183 (1984)........................................30

Harrell v. Crystal, 81 Ohio App. 3d 515, 524, (1992)................................................................17

Havel v. Villa St. Joseph, 131 Ohio St. 3d 235, 242 (2012) ......................................................22

<u>Hawkins v. Ivy</u>, 50 Ohio St.2d 114, 117-18 (1977) ...................................................7

<u>Hill v. Toyota Motor Sales, U.S.A., Inc.</u>, 1995 WL 51051 (Ohio Ct. App. Feb. 10, 1995)......................................................................................................................14

<u>Host v. Ursem</u>, 63109, 1993 WL 266901 (Ohio Ct. App. July 15, 1993)...................19

<u>Hummel v. Hummel</u>, 133 Ohio St. 520, 525 (1938) ...................................................30

<u>In re Crowley v. Chait</u>, 322 F. Supp. 2d 530, 542 (D.N.J. 2004).................................25

<u>In re Paoli R.R. Yard PCB Litig.</u>, 35 F.3d 717, 741 (3d Cir. 1994)........................24, 25

<u>Inter Med. Supplies Ltd. v. EBI Med. Sys., Inc.</u>, 975 F.Supp. 681, 698 (D.N.J.1997)...............21

<u>Johnson v. Stackhouse Oldsmobile</u>, Inc., 27 Ohio St.2d 140, 143 (1971) ....................19

<u>Kabco Equip. Specialists v. Budgetel, Inc.</u>, 2 Ohio App. 3d 58, 61 (10th Dist. 1981) .................15

<u>Keal v. Day</u>, 164 Ohio App. 3d 21, 24, (2005) ..........................................................20

<u>Ketcham v. Miller</u>, 104 Ohio St. 372(1922)...............................................................19

<u>Lasorsa v. Showboat</u>, 2009 WL 2929234 (D.N.J. Sept. 9, 2009) ................................24

<u>Leichtamer v. American Motors Corp.</u>, 67 Ohio St.2d 456, 472 (1981)........................19

<u>Lipscomb v. Lewis</u>, 85 Ohio App. 3d 97, 102 (Ohio Ct. App. 1993) .............................7

<u>Matlin v. Svihlik</u>, 49701, 1985 WL 8517 at *5 (Ohio Ct. App. Oct. 31, 1985)..............9

<u>Mause v. Global Household Brands, Inc.</u>, 2003 WL 22416000, at *4-6 (E.D. Pa. Oct. 20, 2003)...................................................................................................................24

<u>Mays v. W. Park Chevrolet, Inc.</u>, 1992 WL 369304 (Ohio Ct. App. Dec. 10, 1992) .................15

<u>McEnteer v. Moss</u>, 2005 WL 1283707 (2005) ...........................................................19

<u>Nahra v. Honeywell, Inc.</u>, 892 F. Supp. 962, 969 (N.D. Ohio 1995)...............................6

<u>Nious v. Griffin Constr., Inc.</u>, 2004 WL 1752872, at *3 (Ohio Ct. App. Aug. 5, 2004) .............30

<u>Nottingdale Homeowners' Assn., Inc. v. Darby</u>, 33 Ohio St. 3d 32, 33–34 (1987).....................21

<u>Olbrich v. Shelby Mut. Ins. Co.</u>, 13 Ohio App.3d 423 (1983) ......................................20

<u>Pineda v. Ford Motor Co.</u>, 520 F.3d 237-48 (2008).....................................................23

<u>Pope v. Trotwood Madison City Sch. Dist. Bd. of Educ.</u>, 2004 WL 541121, at *1 (Ohio Ct. App. 2004) ...................................................................................................8

<u>Preston v. Murty</u>, 32 Ohio St. 3d 334, 335 (1987) ................................................19, 20

<u>R.J. Wildner Contracting Co., Inc. v. Ohio Tpk. Comm'n</u>, 913 F. Supp. 1031, 1043 (N.D.Ohio 1996)...................................................................................................30

<u>Rhodes v. Rhodes Indus., Inc.</u>, 71 Ohio App. 3d 797, 808-09 (8th Dist. 1991)......................5, 29

<u>Richard A. Berjian, D.O., Inc. v. Ohio Bell Tel. Co.</u>, 54 Ohio St. 2d 147, 158 (1978) ............6, 17

<u>Samadder v. DMF of Ohio, Inc.</u>, 154 Ohio App. 3d 770, 778 (10th Dist. 2003)....................5, 29

479588_1

Solid Gold Jewelers v. ADT Security Systems, Inc., 600 F. Supp. 2d 956, 959, fn. 2
  (N.D. Ohio 2007).................................................................................................6

Sorin v. Warrensville Hts. School Dist. Bd. of Edn. 46 Ohio St.2d 177, 179, (1976) .................20

State v. Odom, 116 N.J. 65, 71 (1989) .................................................................26

Suter v. General Acc. Ins. Co. of Am., 424 F. Supp. 2d 781, 787 (D.N.J. 2006) ........................25

Textron Fin. Corp. v. Nationwide Mut. Ins. Co., 115 Ohio App. 3d 137, 144 (9th Dist.
  1996).................................................................................5, 17, 29

Thompson v. McNeill, 53 Ohio St. 3d 102, 104, fn. 1 (1990) ........................................7

TMI Litig., 193 F.3d 613, 697 (3d Cir.1999) .........................................................25

U.S. Claims v. Ross, 2012 WL 6089514, at *2 (D.N.J. Dec. 6, 2012) ........................................21

United States v. Downing, 753 F.2d 1224, 1237 (3d Cir. 1985).................................................24

Universal Contracting Corp. v. Aug, 2004 WL 3015325 (Ohio Ct. App. Dec. 30, 2004)............18

Volpe v. Heather Knoll Ret. Vill., Inc., 2012 WL 5872749, at *5 (Ohio Ct. App. Nov.
  21, 2012).................................................................................22

Wolpert v. Abbott Laboratories, 2012 WL 1600437, at *8 (D.N.J. May 7, 2012) .......................21


**Statutes**

N.J.S.A. 2A:15–5.13(a) .................................................................................22

R.C. 2315.21(B).................................................................................21, 22

R.C. 2315.21(D)(4).................................................................................20

R.C. 2744.03(A)(5).................................................................................8


**Rules**

F.R.C.P. 26(a)(2)(A); 37(c)(1).................................................................................27

F. R.C.P. 42 .................................................................................22

F.R.C.P. 56 .................................................................................2

F.R.E. 403 .................................................................................18

F.R.E. 701 .................................................................................26, 27

F.R.E. 702 .................................................................................24, 26, 27

479588_1

## PRELIMINARY STATEMENT

Pursuant to the Final Pretrial Order dated September 28, 2012, Defendant, Brulant, LLC ("Brulant" or "Defendant") submits this trial brief: (1) in defense against the claims asserted in Plaintiff, Campmor, Inc.'s ("Campmor" or "Plaintiff") Second Amended Verified Complaint and the Final Pretrial Order; and (2) in support of Brulant's Counterclaim against Campmor.

More specifically, at trial, Brulant will demonstrate that: (1) Brulant did not breach the contract with Campmor; (2) to the extent Campmor was damaged, such damages are subject to the enforceable limitation of liability provision in the Master Services Agreement; (3) Campmor is not entitled to lost profits; (4) Brulant did not breach any warranty; (5) Brulant did not negligently misrepresent facts to Campmor; (6) Campmor is not entitled to punitive damages; and (7) the testimony of Brian Cooper, Campmor managers and employees, and representatives from Red Baritone and NetConcepts should be subject to a limiting instruction. Furthermore, at trial, Brulant will establish that Campmor *did* breach the contract and was unjustly enriched in its retention of monies owed Brulant for services it performed before the contracts were terminated. The trial brief will further serve to identify the accurate legal elements of each remaining causes of action, which Brulant submits should be utilized by the Court in connection with the disputed jury instructions and jury verdict sheets in this matter.

479588_1

## STATEMENT OF FACTS & PROCEDURAL HISTORY

Plaintiff, Campmor, Inc. ("Campmor" or "Plaintiff") filed its Second Amended Complaint against Defendant, Brulant, LLC ("Brulant" or "Defendant") on or about April 27, 2010. In its Second Amended Complaint, Campmor raised five (5) causes of action: (1) Breach of Contract; (2) Breach of Warranty; (3) Fraud; (4) Negligent Misrepresentation; and (5) New Jersey Consumer Fraud Act. After Brulant filed a Motion for Summary Judgment pursuant to F.R.C.P. 56, the Court dismissed Counts 3 (Fraud) and 5 (New Jersey Consumer Fraud Act). Therefore, the only remaining claims to be adjudicated at trial are Breach of Contract, Breach of Warranty, and Negligent Misrepresentation.

Defendant, Brulant, was one of the leading interactive marketing agencies in North America and assisted its clients in all aspects of digital media, including the building and maintenance of sophisticated commercial websites for well-known brands. Brulant was a premier partner of IBM WebSphere Commerce Solutions, which is IBM's software platform for running these B2B and B2C websites. IBM frequently recommended Brulant to install, customize and manage IBM's WebSphere Solutions product. Brulant had one of the largest WebSphere development team in the country.

Plaintiff, Campmor, is a recreational equipment retailer with only one retail outlet located in Paramus, NJ, plus an online ecommerce site. In 2006, Brulant Inc. and Campmor entered into a Master Services Agreement ("MSA") which governed the underlying Statements of Work ("SOWs") and specifically identified the scope of the work to be performed by Brulant in connection which each service. The MSA included an Ohio choice of law provision and an enforceable limitation of liability provision, which states, in relevant part: "Neither [party] will be liable to the other for incidental, indirect, consequential or punitive damages or lost profits even if aware of their possible existence." This clause further restricts any recovery by

479588_1

Campmor arising from their contractual relationship with Brulant to the amount of the "charges paid [to Brulant] for the portion of services or work giving rise to the liability."

Thereafter, Brulant and Campmor entered into three distinct SOWs which each defined the scope of Brulant's services.   In November 2006, the parties entered in the Online Channel Partnership SOW, which dealt with the transition, maintenance and support of the technical backend of Campmor's complex ecommerce website.  In March 2007, the parties entered into a Search Engine Marketing ("SEM") SOW, which called for Brulant to provide visibility and optimization services with respect to Campmor's website, including SEO consulting, pay-per-click ("PPC") investment and shopping comparison engine work.  Finally, in January 2008, the parties entered into an SOW for the upgrade of Campmor's website from IBM WebSphere 5.6 to IBM WebSphere 6.0.  This SOW additionally called for a complete overhaul of the look and feel of Campmor's complex e-commerce website.  The 6.0 upgrade SOW anticipated that the total estimated cost of the upgrade project would be **$665,500.00**.  However, Campmor's technical team had very little training or experience and struggled to provide Brulant with basic support services throughout duration of Brulant's involvement.  Despite the present contentions of Campmor and its CEO, Daniel Jarashow, Campmor's employees were impressed and satisfied with the level of Brulant's services throughout.  By way of example, from 2007 through 2008, Campmor was one of Brulant's primary client reference for obtaining new work.

Despite being repeatedly advised of the potential for incompatibilities and the need for further optimization after launch by Brulant, Campmor exhibited no patience whatsoever following the launch on March 25, 2009, and it apparently expected a flawless website from day one. Jarashow and Campmor's management team became increasingly petulant towards Brulant with respect to the scope and timing of fixes to the website.  Despite Campmor's alleged

dissatisfaction, it continued to use the website, essentially unaltered, for nearly a complete year after the relationship with Brulant ended.  Moreover, following launch, Campmor, in violation the applicable SOWs, refused to render payment in response to invoices rendered by Brulant. Brulant will establish at trial that it diligently worked to address Campmor's revisions to the site, many of which were beyond the scope of the SOWs or were alterations to  work that had previously been approved by Campmor.  At trial, Brulant will also prove that Campmor has no evidence supporting SEO claims, which are based upon a misunderstanding of basic SEO fundamentals.

In this action, Campmor is falsely claiming that the updated website was the sole and exclusive cause of millions of dollars of lost sales.  This contention entirely ignores: (1) that Campmor's sales were trending downward well before the launch of the 6.0 site; (2) that the United States economy was in the midst of a historic recession which caused a decrease in customer demand for outdoor recreation equipment and decreased sales across Campmor's entire industry; and (3) Campmor's own decision to decrease its marketing efforts prior to the launch of the new website.  At trial, Brulant will establish that it did not breach the underlying MSA or SOWs and that Campmor is not entitled to the recovery of its contract damages or lost profits. Brulant will also establish that Campmor itself breached the underlying MSA and SOWs by not remitting payment for services rendered by Brulant.

## LEGAL ARGUMENT

## POINT I

## CAMPMOR FAILS TO ESTABLISH BREACH OF CONTRACT.

### A.    Ohio Breach of Contract Standard and Burden

To prove a breach of contract under Ohio law, Campmor must prove:  (1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damages or loss to the plaintiff.  Samadder v. DMF of Ohio, Inc., 154 Ohio App. 3d 770, 778 (10th Dist. 2003).  A plaintiff must prove these elements by a preponderance of the evidence.  See Cooper & Pachell v. Haslage, 142 Ohio App. 3d 704, 707 (9th Dist. 2001).

In Ohio, "[a]s a general rule, an injured party cannot recover damages for breach of contract beyond the amount that is established by the evidence with reasonable certainty, and generally, courts have required greater certainty in the proof of damages for breach of contract than in tort."  Rhodes v. Rhodes Indus., Inc., 71 Ohio App. 3d 797, 808-09 (8th Dist. 1991).  "The damages awarded for a breach of contract should place the injured party in as good a position as it would have been in but for the breach."  Textron Fin. Corp. v. Nationwide Mut. Ins. Co., 115 Ohio App. 3d 137, 144 (9th Dist. 1996).  These compensatory damages, otherwise known as "expectation damages," are limited to actual loss, and "that loss must be established with reasonably certainty."  Doner v. Snapp, 98 Ohio App. 3d 597, 601 (2d Dist. 1994).

As set forth supra, Campmor is unable to establish, by the preponderance of the evidence, that Brulant breached the agreements in question nor can Campmor establish, with reasonable certainty, the amount of damages that were allegedly caused by Brulant's alleged breach.  There is simply no admissible evidence that there was anything wrong with the fundamentals of the website created and designed by Brulant.

### B.   Limitation of Liability

Under Ohio Law, a freely negotiated limitation of liability clause is enforceable and valid. Nahra v. Honeywell, Inc., 892 F. Supp. 962, 969 (N.D. Ohio 1995). In Ohio, agreements to limit liability are considered neither unconscionable nor violative of public policy. See Cardinal Stone Co. v. Rival Mfg. Co., 669 F.2d 395, 396 (6th Cir. 1982). "Absent important public policy concerns, unconscionability, or vague and ambiguous terms, [such] provisions will be upheld, *so long as the party invoking the provision has not committed a willful or reckless breach*." Id. (citations omitted) (emphasis added); see also Solid Gold Jewelers v. ADT Security Systems, Inc., 600 F. Supp. 2d 956, 959, n. 2 (N.D. Ohio 2007) (finding that a willful or reckless breach is considered to be an intentional breach and is, thus, willful misconduct).

The Ohio Supreme Court stated that "[a]lthough a limitation-of-liability clause for damages caused by one's own negligence may be valid and enforceable, it is ineffective where the party to the contract seeking protecting under the clause *has failed to exercise any care whatsoever toward those to whom he owes a duty of care*." Richard A. Berjian, D.O., Inc. v. Ohio Bell Tel. Co., 54 Ohio St. 2d 147, 158 (Ohio 1978) (emphasis added). With respect to breach of contract claims, limitation of liability provisions will be upheld and enforced, so long as the party invoking the provision has not committed a willful or reckless breach. Id. at 157. The party seeking to set aside the negotiated contractual limitation of liability bears the burden to establish the existence of recklessness. In Ohio, the heightened standard of clear and convincing evidence generally applies to the proof of reckless conduct. See Burns v. Rice, 157 Ohio App. 3d 620, 636 (2004).

As noted above, the MSA between Brulant and Campmor (which applies to each subsequent SOW) included a valid and enforceable limitation of liability clause. The specific

language of that clause restricts Campmor's prospective recovery to only the fees paid to Brulant for the specific service giving rise to the liability proven by Campmor, if any.

### C.      Recklessness Under Ohio Law

In order to set aside the freely negotiated limitation of liability provision, Campmor must establish that Brulant recklessly discharged its duties under the MSA and SOWs. The Ohio Supreme Court has characterized recklessness as the "intermediate standard" above negligence, but below intentional conduct. See Thompson v. McNeill, 53 Ohio St. 3d 102, 104 (Ohio 1990). In order to establish recklessness, a party must be found to have failed "to exercise any care whatsoever toward those to whom" a duty of care is owed and this "failure occurs under circumstances in which there is a great probability that harm will result." Hawkins v. Ivy, 50 Ohio St. 2d 114, 117-18 (Ohio 1977). Ohio Courts have also identified that "recklessness" is used interchangeably with "wanton." Thompson, supra, 53 Ohio St. 3d at 104, n. 1. Under Ohio law, reckless conduct must generally be established by the plaintiff by clear and convincing evidence. See Burns, supra, 157 Ohio App. 3d at 636.

Courts have defined "recklessness" as "a perverse disregard for a known risk." Lipscomb v. Lewis, 85 Ohio App. 3d 97, 102 (Ohio Ct. App. 1993). Wantonness "implies the failure to *exercise any care* for the safety of those to whom a duty of care is owing when the wrongdoer has knowledge of the great probability of harm to such persons which the exercise of care might avert, and exhibits a reckless disregard of consequences; it does not embrace intent to injury." Addis v. Howell, 137 Ohio App. 3d 54, 59 (Ohio Ct. App. 2000). Ohio Courts have further reasoned recklessness is "understood as a mental state apart from negligence and akin to *conscious disregard*." Comshare Inc. Sec. Litig., 183 F.3d 542, 550 (6th Cir. 1999) (emphasis added).

As set forth supra, under Ohio law, recklessness exists where a party disregards or ignores an owed duty of care.   Although there is a dearth of decisions addressing the recklessness standard as applied to breach of contract claims, Ohio Courts have repeatedly determined that, where a plaintiff's claims actually question the extent or appropriateness of a defendant's actions, reckless cannot be found.

In Pope v. Trotwood Madison City Sch. Dist. Bd. of Educ., 2004 WL 541121, at *1 (Ohio Ct. App. 2004), the estate of a student who was killed after colliding with the wall during in a school run "open gym" basketball game sought to establish recklessness in order to maintain a claim against the school district.[1]   The plaintiff, in part, contended that the mats surrounding the gym were inadequate.   Id. at *4.   The Court, in part, reasoned that since the plaintiff was questioning the *adequacy* of the mats surrounding the gym, it was only asserting a claim for negligence, not recklessness, and found that recklessness could not be established as a matter of law.   Ibid.   The Court reasoned that claiming that alternative mats should have been installed could not rise to the level of a "perverse disregard for a known risk or a failure to exercise any care" and the Court entered summary judgment in favor of the Defendant.   Ibid.   As set forth infra, in this matter, Campmor similarly admits that Brulant did not disregard or ignore its owed contractual duties, but it is merely challenging the *adequacy* of the actions taken by Brulant under the contracts at issue.

Here, Campmor's general contention relies upon a misstatement of law, as breach of contract cannot "rise to the level" of recklessness through the "egregiousness" of the breach.

---

[1] R.C. 2744.03(A)(5) provides that a "political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner."

Under Ohio law, recklessness requires a showing that obligations were consciously disregarded or were simply not undertaken.

### C.     There is no Cause of Action for Reckless Breach of Contract in Ohio

As reflected in the Final Pretrial Order, the allegations of recklessness primarily relate to SEO work on the upgraded site between March and June of 2009.  At trial, Brulant will vigorously contest Campmor's characterizations of Brulant's services and obligations with respect to SEO in this period.  However, Campmor's attempts to claim selective and/or partial recklessness are logically deficient cannot be permitted.  Here, Campmor and Brulant operated under multiple SOWs between 2006 and 2009. Plaintiff's notion that the alleged breach of one sub-provision of one SOW, can somehow "rise to the level" of recklessness is incompatible with Ohio law.

Furthermore, Plaintiff continues to contend that it has asserted an independent cause of action for "reckless breach of contract."   In Ohio, there is no independent cause of action for "reckless breach of contract" See Matlin v. Svihlik, 49701, 1985 WL 8517 at *5 (Ohio Ct. App. Oct. 31, 1985).  The Model Ohio Jury instructions contain no reference to a claim for "reckless breach of contract."  Allegations of recklessness are only implicated in this matter as a result of Campmor attempts to disregard the negotiated limitation of liability provision in the MSA.  It is Brulant's position that Campmor's attempts to charge the jury concerning an alleged claim for "reckless breach of contract" should fail.

### D.     Lost Profits

Even assuming *arguendo* that the limitation of liability clause is set aside (though it should not be), Campmor cannot establish the existence of lost profits as a result of Brulant's actions.  In Ohio, lost profits must be identified with reasonably certainty and the amount the

plaintiff saved by not having to perform should be subtracted.  See City of Gahanna v. Eastgate Properties, Inc., 36 Ohio St. 3d 65, 68 (1988).

In this case, it is respectfully submitted that, at trial, Campmor cannot prove the existence of one lost sale with the requisite reasonable certainty based on admissions made by Campmor representatives in prior sworn deposition testimony in addition to admissions made in the Final Pretrial Order.  Notably, Campmor's internet sales began to precipitously decline in the fall of 2008, which coincided with the start of the recent recession and, more importantly, predates the launch of the 6.0 website and any alleged problems associated with it.

During Jarashow's deposition, he complained about the most significant alleged issues that Campmor had with Brulant, yet Campmor has failed to proffer any evidence that it suffered any lost sales due to these issues.  Specifically:

- Campmor has no evidence that the computer catalog issue or the custom table migration issued actually caused any lost sales to Campmor.

- Campmor has no evidence of any lost sales due to the "custom code" issue.

- With regard to Campmor's allegations that the SEO was not working on the 6.0 site, Campmor has no documentation from any source that quantifies any loss in sales due to the alleged SEO issue.

- Jarashow also described an issue with the credit card feature of the website, but once again Campmor has no idea as to what percentage of customers or sales were affected by this issue.

- William O'Donnell was not aware of, nor did he ever see anything to measure or tie, Campmor's decreased total revenue to the alleged SEO issues.

- Campmor has no documents, testimony, or any other information to quantify any effect on its sales that the alleged OmniFind issue had.

- While Eyler believed that the website was not functioning as properly as Campmor wanted it to, he is unable to correlate the issue of any loss of business due to Brulant.

- Eyler was never aware of any documentation to quantify the effect that Brulant's work had on Campmor's internet sales.

As discussed supra, Campmor was well aware prior to going "live" that there were certain issues with the website and Campmor did not actually have an expectation that the website should be "perfect." More importantly, none of the SOWs or MSA promised a "perfect" website. Accordingly, after the 6.0 site was launched, Campmor and Brulant worked together to tackle the ongoing issues associated with the launch of a new e-commerce website. Specifically, on April 8, 2009, after the launch of the 6.0 website, William O'Donnell, Campmor's Executive Vice President, circulated a punch list of issues – many of which Campmor now complains of as part of its Breach of Contract claim. Most of these issues were resolved by Brulant, and Campmor has **no any evidence of any lost sales** associated with any of these issues. These alleged issues are identified in the below chart:

|   | Description of Issue – As identified in Campmor's "punch list" | Evidence of lost sales? |
|---|---|---|
| 1 | Tent spec. charts (allowed customers to compare tents) | None |
| 2 | Shop by Brand | None |
| 3 | Fix Publish 1.jsp | None |
| 4 | Cross sells (identifies suggested items to go with each product) | None |
| 5 | Key Word Seach (related to OmniFind search box) | None |
| 6 | Friendly page (suggestion page if item unavailable) | None |
| 7 | Shipping to Puerto Rico | N/A – nominal sales to P.R. |
| 8 | Clothing sizes not in correct order | None |
| 9 | Boot sizes not in correct order | None |
| 10 | City/zip code | None |
| 11 | Left hand navigation not properly working | None |
| 12 | Check-out shipping page | None |
| 13 | Backorder notice | None |
| 14 | Wish list | None |
| 15 | Checkout phone numbers | None |

479588_1

| 16 | Food page | None |
|----|-----------|------|
| 17 | Thule/Yakima Configurator | None |
| 18 | Check-out Canadian Zip Codes | N/A - nominal sales to Canada |
| 19 | Continue Shopping | None |
| 20 | Checkout Continue Button | None |
| 21 | Retail Store Link | None |
| 22 | Gift Registry | None |
| 23 | Catalog Requests | None |
| 24 | Cascade Designs | None |
| 25 | Climbing Warning | None |
| 26 | Zip Plus 4 | None |
| 27 | Additional Shipping Charges | None |
| 28 | Forgotten Password | None |
| 29 | Unsubscribe from Trail Mail | None |
| 30 | Corporate Discounts | None |
| 31 | Logins/Order Histories | None |
| 32 | Links to Campmor | None |
| 33 | Clothing Size Charts | None |
| 34 | Product Page Verbiage | None |
| 35 | Live Chat | None |

Accordingly, Campmor has no evidence of any actual lost sales associated with any of the aspects of the 6.0 website that it claims were not functioning properly.

Campmor alleges that some of its customers complained via e-mail to its Customer Service Department. However, Campmor has no evidence as to how many customers logged complaints prior to the launch of the 6.0 website. More importantly, Campmor's Customer Service Department would work with its customers to correct occurring issues and problems, but Campmor did not keep track of what percentage of issues was resolved by Customer Service. Again, one of the purposes of the Customer Service Department was to resolve issues including those involving credit cards. Yet, Campmor has no idea as to what percentage of any credit card issues were resolved by customer service. In other words, Campmor has no evidence as to any direct lost sales associated with these customer complaints.

Campmor does not have an expert witness to explain to the court or jury how Brulant failed to properly build an IBM 6.0 WebSphere commercial website. Nevertheless, it certainly cannot seriously be contemplating relying on hearsay e-mails from customers to establish a breach of contract, especially when these customer complaints may have been resolved by Campmor's Customer Service Department, which failed to keep track of what customers' orders were resolved.

## POINT II

## CAMPMOR CANNOT PREVAIL ON ITS BREACH OF WARRANTY CLAIM.

In this action, Campmor has asserted a breach of warranty claim. Campmor's Second Amended Complaint contends that Brulant breached a warranty related to the contract by failing to perform the work it was contracted to do in a "professional, competent and workmanlike manner." Confusingly, Campmor also appears to contend that Brulant breached an implied covenant of merchantability with respect to the *services* it provided under the contract. The Final Pretrial Order contains no reference to conduct that addresses its breach of warranty claim. The MSA includes an express warranty that the contracts entered into between Campmor and Brulant call for the provisions of services, not goods. The express waiver of the MSA provides only that the services will be "performed in a workmanlike manner in accordance with applicable professional standards, and we will re-perform any work not in compliance brought to our attention within 30 days." Further, the MSA waives any and all other warranties beyond the express warranty identified therein, and the MSA includes an opportunity for Brulant to cure any alleged deficiencies.

Under Ohio law, in order to establish the breach of an express warranty for a service contract, a plaintiff must establish: (1) the existence of a promise which becomes the basis of the bargain; (2) that a reasonable person would believe a promise about the quality and/or performance of the services; (3) that the promise was relied upon; and (4) that the services provided failed their essential purpose. See Comments to 1 OJI-CV 505.11; Goddard v. Gen. Motors Corp., 60 Ohio St. 2d 41, 49 (1979). The plaintiff must establish each element by a preponderance of the evidence. Hill v. Toyota Motor Sales, U.S.A., Inc., 1995 WL 51051 (Ohio Ct. App. Feb. 10, 1995). Subject to the application of the limitation of liability provision, the

479588_1

-14-

correct measure of damages for breach of warranty is the difference in value of the services that were warranted under the contracts and those that were actually provided.  Goddard, supra, 60 Ohio St. 2d at 49.   Express or implied warranties may be contractually waived between the parties.  See Mays v. W. Park Chevrolet, Inc., 1992 WL 369304 (Ohio Ct. App. Dec. 10, 1992). Campmor does not dispute that the limitation of liability provision, if applicable, encompasses its breach of warranty claim.

Further, Campmor's breach of warranty and breach of contract claims can be curtailed because, in contravention of the MSA, Campmor failed to give Brulant a reasonable opportunity to cure the alleged deficiencies before terminating or constructively terminating the MSA and the SOWs.  See Kabco Equip. Specialists v. Budgetel, Inc., 2 Ohio App. 3d 58, 61 (10th Dist. 1981).

Here, Campmor has elicited no evidence that the services provided by Brulant failed their essential purpose, as Campmor has readily acknowledged that Brulant provided a functional and accessible e-commerce website at all times herein.  At trial, Campmor will be able to offer no evidence to the contrary.

479588_1

## POINT III

## UNDER OHIO LAW, A NEGLIGENT MISREPRESENTA-TION CLAIM CANNOT BE BASED UPON THE SUBJECT MATTER OF A CONTRACT BETWEEN THE PARTIES.

**A.     Campmor's Negligent Misrepresentation Claim**

In its Second Amended Complaint, Campmor asserts a negligent misrepresentation claim as an alternative to its now dismissed fraud claim. Specifically, Campmor claims Brulant negligently misrepresented certain facts "in order to secure" the 6.0 upgrade SOW. The Final Pretrial Order makes no specific reference to factual allegations concerning negligent misrepresentations. This Court has never addressed the legal viability of Campmor's Negligent Misrepresentation claim as applied to the specific facts in this matter.[2]

**B.     Ohio Standard for Negligent Misrepresentation**

Under Ohio law, to establish negligent misrepresentation, a plaintiff must prove that that defendant: (1) in the course of his or her business, or a transaction in which he has a pecuniary interest; (2) supplied false information for the guidance of others in their business transactions, and (3) he failed to exercise reasonable care or competence in obtaining or communicating the information. Delman v. City of Cleveland Heights, 41 Ohio St. 3d 1, 4 (1989). The above elements must be established by Plaintiff by a preponderance of the evidence. Bros. v. Morrone-O'Keefe Dev. Co., 2006 WL 620894, at *5 (Ohio Ct. App. Mar. 9, 2006). Subject to the application of the limitation of liability provision, the damages recoverable in connection with a negligent misrepresentation claim are limited to: (1) the difference between the value of what he services received and price or other value given for it; and (2) pecuniary loss suffered otherwise as a consequence of reliance upon the misrepresentation. Harrell v. Crystal, 81 Ohio App. 3d

---

[2] This Court previously ruled that Brulant's Summary Judgment Motion, which was filed by prior counsel, did not address Campmor's Negligent Misrepresentation Claim.

479588_1

515, 524, (1992). There is no dispute that a binding limitation of liability provision encompasses tort claims including negligent misrepresentation claims. The limitation of liability contained within the MSA expressly makes reference to claims for "negligence" and such provisions are enforceable and encompass tort and negligence claims, in addition to contractual claims. <u>See e.g.</u>, <u>Richard A. Berjian, D.O., Inc. v. Ohio Bell Tel. Co.</u>, 54 Ohio St. 2d 147, 158 (1978).

However, under Ohio law, there is an outright prohibition on recovering on a negligent misrepresentation claim where the alleged misrepresentation is made prior to an unambiguous written contract on the same issue that is different from that which is contained in the contract. <u>Ed Schory & Sons, Inc. v. Soc. Natl. Bank</u>, 75 Ohio St. 3d 433, (1996). Stated differently, parol statements regarding precisely the same subject matter as the applicable written agreements among the parties cannot be utilized to afford different meaning to a contract. <u>Id.</u> at 441. If such conduct were to be permitted, "contracts would not be worth the paper on which they are written. If a person can read and is not prevented from reading what he signs, he alone is responsible for his omission to read what he signs." <u>Dice v. Akron, Canton & Youngstown RR. Co.</u>, 155 Ohio St. 185, 191 (1951).

Under Ohio law, "a breach of contract does not create a remedy in tort and the existence of a contract action generally excludes a plaintiff from presenting the same case as a tort claim. <u>425 Beecher, L.L.C. v. Unizan Bank, Natl. Assn.</u>, 186 Ohio App. 3d 214, 229-30 (10th Dist. 2010) (citing <u>Textron Fin. Corp.</u>, <u>supra</u>, 115 Ohio App.3d at 151). In order to maintain a negligent misrepresentation claim, Ohio Courts require "the existence of a duty to provide accurate information to the plaintiff that goes beyond the common-law duty to exercise reasonable care to prevent foreseeable harm." <u>425 Beecher</u>, <u>supra</u>, 186 Ohio App. 3d at 229 (citing <u>Universal Contracting Corp. v. Aug</u>, 2004 WL 3015325 (Ohio Ct. App. Dec. 30, 2004)).

In 425 Beecher, an Ohio appellate court upheld the dismissal of a negligent misrepresentation claim where the plaintiff failed to identify any duty "apart from those that were created by their contracts." Id. at 229.

### C. Evidence Related Only to the Negligent Misrepresentation Claim should be Precluded

In an *in limine* motion, Brulant moved to exclude Campmor from introducing "marketing information, PowerPoint presentations, status updates, charts and other similar data, information and oral statements" to impose obligations beyond the contracts upon Brulant. This Court ruled that such information was inadmissible, based upon the parol evidence rule, to augment the Brulant's contractual obligations. However, this Court also ruled that such evidence would be admissible *only* to support Campmor's negligent misrepresentation claim.

As reflected above, the only allegedly negligent statements made by Brulant, relate to issues addressed in a subsequent contract. Based upon the authority cited above, Campmor's negligent misrepresentation claim will be rendered futile the moment Campmor establishes that a contract existed between the parties on the same issue as alleged negligent misrepresentations. As such, Brulant notes that there is the potential for evidentiary issues at trial regarding the introduction of evidence which is *only* relevant to the negligent misrepresentation claims. It is Brulant's position that evidence relevant *only* to the alleged negligent misrepresentation claim should be precluded pursuant to F.R.E. 403, as its "probative value [will be] substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." F.R.E. 403. Alternatively, Brulant seeks a limiting instruction requiring that the jury not consider such statements in connection with Campmor's breach of warranty and breach of contract claims.

## POINT IV

## CAMPMOR WILL BE UNABLE TO OBTAIN PUNITIVE DAMAGES AT TRIAL.

### A. Ohio Standard for Punitive Damages and Attorneys' Fees

Punitive damages are generally unavailable for breach of contract actions in Ohio. "It is settled in [Ohio] that punitive damages are not recoverable in an action for breach of contract, *even though it is alleged that the breach was unlawful, willful, wanton, and malicious*." Host v. Ursem, 1993 WL 266901 (Ohio Ct. App. July 15, 1993) (emphasis added) (citing Ketcham v. Miller, 104 Ohio St. 372 (1922)). The Ohio rule remains that punitive damages are recoverable for a tort committed in connection with, but independently of, a breach of contract, and the punitive damages are allowed for the independent tort, and not for the breach of the contract. Ibid.

In Ohio, punitive damages are only permitted in actions involving "fraud, malice, or insult." Preston v. Murty, 32 Ohio St. 3d 334, 335 (Ohio 1987); see also McEnteer v. Moss, 2005 WL 1283707 (Ohio Ct. App. June 1, 2005). An award of punitive damages requires something more than a showing of mere negligence. Ferritto v. Olde & Co., Inc., 62 Ohio App. 3d 582, 589 (Ohio Ct. App. 1989) (citing Leichtamer v. American Motors Corp., 67 Ohio St. 2d 456, 472 (Ohio 1981)). "[A]ctual malice, necessary for an award of punitive damages, is (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." Preston, supra, 32 Ohio St. 3d at 335-36.

To establish the existence of malice, a plaintiff bears the burden to establish intentional malicious conduct on the part of the defendant by the heightened standard of clear and convincing evidence. Johnson v. Stackhouse Oldsmobile, Inc., 27 Ohio St. 2d 140, 143 (1971).

In Ohio, an award of punitive damages requires a showing of "malice or aggravated or egregious fraud" "the burden of proof shall be upon a plaintiff in question, by clear and convincing evidence, to establish that the plaintiff is entitled to recover punitive or exemplary damages." R.C. 2315.21(D)(4).   "Since punitive damages are assessed for punishment and not compensation, a positive element of conscious wrongdoing is always required. This element has been termed conscious, deliberate or intentional.  It requires the party to possess knowledge of the harm that might be caused by his behavior." Preston, supra, 32 Ohio St. 3d at 335-36.

In Olbrich v. Shelby Mut. Ins. Co., 13 Ohio App. 3d 423 (Ohio Ct. App. 1983), the Court overturned an award of punitive damages and attorneys' fees, stating in part "[i]n order to support an award of punitive damages in an action based upon breach of an insurance contract, record must portray *proof of actual malice, fraud, or insult on part of the insurer*."  (emphasis added).   In Curran v. Vincent, 175 Ohio App. 3d 146, 152-53 (Ohio Ct. App. 2007), the Court noted that "[f]raudulent or negligent misrepresentations and fraudulent inducements are all valid tort claims.  [Only] Fraud can lead to both compensatory damages and punitive damages." Prevailing upon a claim of negligent misrepresentation does not entitle a party to recover punitive damages, as a showing of fraud is required.  Ibid.

With regard to Campmor's related claims for fee shifting, Ohio has adopted the so called "American Rule," which requires that the parties to a lawsuit bear his or her own attorney fees and costs.  Keal v. Day, 164 Ohio App. 3d 21, 24 (Ohio Ct. App. 2005); see also Sorin v. Warrensville Hts. School Dist. Bd. of Edn. 46 Ohio St. 2d 177, 179 (1976).  The narrow exceptions to this rule allow fee-shifting and taxing attorney fees as costs where: (1) there has been a finding of bad faith, (2) a statute expressly provides that the prevailing party may recover attorney fees, and (3) the parties' contract provides for fee-shifting.   See Nottingdale

Homeowners' Assn., Inc. v. Darby, 33 Ohio St. 3d 32, 33–34 (1987).   Without statutory authorization, bad faith, such as fraud, is generally the only circumstance where attorney fees may properly be awarded." Curran, supra, 175 Ohio App. 3d at 153.

Based upon the evidence that Brulant will present at trial, there is no likelihood that punitive damages will be assessed against Brulant or that an award of counsel fees is appropriate. Brulant will establish that it diligently worked for Campmor's benefit at all times and engaged in no malicious or bad faith conduct that would justify the award of punitive damages or attorneys fees.

### B.   Mandatory Bifurcation of Campmor's Punitive Damage Claim

The Ohio punitive damage statute, R.C. 2315.21(B), allows, on motion, for the mandatory bifurcation of punitive damage claims from the primary trial regarding compensatory damage claims. This statute specifically precludes reference to punitive damage issues in the initial compensatory damages phase of the trial. Ibid.

"Under the Erie doctrine, in cases heard on diversity jurisdiction, a federal court must apply state substantive law and federal procedural law." U.S. Claims v. Ross, 2012 WL 6089514, at *2 (D.N.J. Dec. 6, 2012) (citing Gasperini v. Ctr. for Humanities, 518 U.S. 415, 427 (1996)). This Court has specifically determined that an analogous New Jersey statute calling for the bifurcation of punitive damages was a substantive rule and statue, which applied when a New Jersey law is applied by a court in this district exercising diversity jurisdiction. Wolpert v. Abbott Laboratories, 2012 WL 1600437, at *8 (D.N.J. May 7, 2012).   Other statutory provisions, relating to punitive damages, have been deemed procedural and applied by a New Jersey court sitting diversity. See Browning–Ferris Indus., Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 279 (1989); Inter Med. Supplies Ltd. v. EBI Med. Sys., Inc., 975 F.Supp. 681, 698 (D.N.J.1997).

479588_1

Ohio state courts have confirmed that Ohio's mandatory bifurcation provision is, in fact, a substantive rule, and not procedural rule. Havel v. Villa St. Joseph, 131 Ohio St. 3d 235, 242 (2012); Flynn v. Fairview Village Retirement Community, Ltd., 132 Ohio St. 3d 199, 200-01 (2012); Volpe v. Heather Knoll Ret. Vill., Inc., 2012 WL 5872749, at *5 (Ohio Ct. App. Nov. 21, 2012). Campmor has refused to consent to this mandatory bifurcation process claiming that Fed. R. Civ. P. 42 applies, instead of R.C. 2315.21(B). To the extent that Campmor seeks recovery of punitive damages pursuant to Ohio law, this mandatory bifurcation provision must be applied. As noted above, New Jersey has also enacted a statute providing that "[a]ny actions involving punitive damages shall, if requested by any defendant, be conducted in a bifurcated trial." N.J.S.A. 2A:15–5.13(a). Plaintiff's contention that Fed. R. Civ. P. 42 governs the bifurcation of punitive damage claims, instead of either Ohio or New Jersey law, entirely disregards Erie R.R. v. Tompkins and its progeny, which brought to an end the judicial practice of applying federal common law in diversity cases. 304 U.S. 64 (1938).

In this action, Brulant moved to preclude Campmor's reference to alleged claims for punitive damages in the Final Pretrial Order, contending its remaining claims did not give rise to punitive damages and that such claims were never specifically set forth in Campmor's Second Amended Complaint in this matter. On April 30, 2013, this Court denied Brulant's motion to strike Campmor's reference to punitive damage claims from the Final Pretrial Order. As such, the issue of bifurcation of punitive damages was not yet ripe for adjudication and Brulant could not have moved to bifurcate punitive damages from the underlying proceeding. As set forth above, punitive damages should be bifurcated from the primary compensatory damages stage and any evidence related to punitive damages should be precluded in the compensatory damages stage.

479588_1

-22-

**POINT V**

**THE ANTICIPATED EXPERT TESTIMONY OFFERED BY BRIAN COOPER ALONG WITH NON-EXPERTS SHOULD NOT BE GIVEN WEIGHT IN SUPPORT OF PLAINTIFF'S CLAIMS AND SHOULD BE SUBJECT TO A LIMITING INSTRUCTION.**

**A.      Expert Standard**

The lone liability expert identified by Campmor in support of its claims against Brulant is Brian Cooper, an alleged SEO professional.  Cooper provided an initial report ("Initial Report") dated November 9, 2010 and he was deposed regarding the initial report on January 19, 2011. Cooper's deposition testimony revealed that his expertise in the SEO field derived solely from being self-taught during limited on the job experience, including two recent SEO related jobs from which he was ultimately terminated.  He has received no formal SEO training and his limited work experience in the field was derived from positions which included general computer services and not just SEO work.

In assessing the "reliability" of expert testimony, a court should consider:  (i) whether a method consists of a testable hypothesis; (ii) whether the method has been subject to peer review; (iii) the known or potential rate of error; (iv) the existence and maintenance of standards controlling the technique's operation; (v) whether the method is generally accepted; (vi) the relationship of the technique to methods which have been established to be reliable; (vii) the qualifications of the expert witness testifying based on the methodology; and (viii) the non-judicial uses to which the method has been put.  Daubert v. Merrell Dow Pharms., 509 U.S. 579, 592-93 (1993) (citing Pineda v. Ford Motor Co., 520 F.3d 237, 248 (3d Cir. 2008)); Bowers v. Nat'l Collegiate Athletic Ass'n, 564 F. Supp. 2d 322, 346 (D.N.J. 2008).

It is well established that experience cannot obviate the need for some semblance of a methodology, even in the "soft sciences." See Mause v. Global Household Brands, Inc., 2003

WL 22416000, at *4-6 (E.D. Pa. Oct. 20, 2003).  Rule 702 requires that, to be admissible, the expert's testimony must "fit" the case by assisting the trier of fact in resolving disputed factual issues.  In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741 (3d Cir. 1994). In order for an expert's opinion to "fit," the opinion must actually be consistent with the facts of record -- "[n]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997); Lasorsa v. Showboat, 2009 WL 2929234 (D.N.J. Sept. 9, 2009).  There must be a "connection between the scientific research or test result to be presented, and the particular factual issues in the case."  United States v. Downing, 753 F.2d 1224, 1237 (3d Cir. 1985).  Where expert testimony is not sufficiently related to the facts of the case, it should be excluded by the trial court. Habecker v. Clark Equip. Co., 36 F.3d 278 (3d Cir. 1994).

### B.    Campmor's SEO Experts' Methods are Unreliable.

The most glaring flaw in Cooper's Supplemental Report is still the methodology, or lack thereof, supporting his alleged expert opinion.  In order to evaluate Brulant's SEO work on the upgraded site, Cooper relies *only* upon an audit by Campmor's paid consultant, which itself was not intended as an evaluation of the SEO services provided by Brulant.[3]  Despite being offered as a liability expert, Cooper never actually reviewed or identified the SEO services provided by Brulant in the limited window at issue.  He also admits he never actually reviewed, tested or analyzed any data or metrics with respect to Campmor.com, including its SEO scores and rankings.  It is axiomatic that Cooper's alleged expert opinion regarding Brulant's SEO work on

---

[3]  Although, the Supplemental Report contends that Cooper's opinion is also based upon the "data" listed in Exhibit B, the Net Concepts Audit remains the only document cited or referenced in the report with respect to Brulant's underlying actions.  Further, Cooper's deposition testimony confirms that his understanding of Brulant's work was based only upon the Net Concepts Audit.

Campmor.com is unreliable as he did not personally review, test or analyze: (a) any data concerning Campmor.com; or (b) any information concerning the actual SEO and/or upgrade undertaken by Brulant.

In the Third Circuit, one of the factors to determine the admissibility of an expert is "the reliability of his or her methodology and the application of that methodology." In re Paoli R.R. Yard PCB Lit, supra, 35 F.3d at 741-43. Expert testimony is only admissible if the opinion is sufficiently connected to the facts and issues presented. Suter v. General Acc. Ins. Co. of Am., 424 F. Supp. 2d 781, 787 (D.N.J. 2006). In order to be reliable, an expert's opinion must be based upon his or her own independent testing or analysis. In re Crowley v. Chait, 322 F. Supp. 2d 530, 542 (D.N.J. 2004); TMI Litig., 193 F.3d 613, 697 (3d Cir.1999).

Here, Cooper's methods are so far removed from the actual dispute at issue that it is unreliable and of no true benefit to the trier of fact. Cooper's Supplemental Report does not address the fact that the SEO work at issue was the result of a comprehensive upgrade of Campmor's e-commerce website, nor does he ever acknowledge that Campmor terminated Brulant from SEO work only three (3) months after the launch of the new site. Cooper does nothing to attribute any claimed losses to that specific period. Cooper *only* reviewed an SEO audit prepared by Campmor's consultant and he engaged in no independent testing or analysis of Brulant's actions or Campmor's website. Cooper's Supplemental Report is little more than a general outline of the alleged expert's own subjective understanding of broad SEO concepts, which partially references a Google Starter Guide which was not even in existence at the time of Brulant's work. The above is coupled with the sweeping statement that Brulant did not follow any of these guidelines, which it itself is based *only* upon an audit by a paid consultant that was not intended as a critique of Brulant's services.

## C.    Non-Experts

### i.    *Testimony from Campmor Managers and Employees*

In addition to Cooper's unfounded expert testimony, no weight should also be given to the lay testimony from Campmor managers and employees as to what was allegedly done wrong by Brulant from a technical standpoint.[4]  While those managers and employees can testify as to their *perceived* complaints from the perspective of a lay person, they cannot testify as to Brulant's performance because such testimony is not based on technical or specialized knowledge in this field.  See F.R.E. 701.  In fact, Campmor's managers have admitted that the have little or no technical background or experience regarding WebSphere or the design and build out of an e-commerce websites generally.

A lay witness can give testimony in the form of an opinion that is limited to one that is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) *not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.*"  F.R.E. 701 (emphasis added).  On the other hand, an expert witness is one that is qualified "by knowledge, skill, experience, training, or education" and may testify if:

(a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b)    the testimony is based on sufficient facts or data;
(c)    the testimony is the product of reliable principles and methods; and
(d)    the expert has reliably applied the principles and methods to the facts of the case.

F.R.E. 702; see also State v. Odom, 116 N.J. 65, 71 (1989) (stating that an expert must "be suitably qualified and possessed of sufficient specialized knowledge to be able to [express an expert opinion] and to explain the basis of that opinion").  Additionally, no Campmor managers

---

[4] Campmor's proposed fact witnesses from Campmor include Daniel Jarashow and William O'Donnell.

or employees were ever identified as experts in Campmor's pretrial disclosures nor have any reports been disclosed from any such individuals. See F.R.C.P. 26(a)(2)(A); 37(c)(1).

It is clear that Campmor managers and employees are not qualified as experts, and can only proffer testimony as to what they perceived did not work from a lay person perspective. They are not professionals with technical or scientific experience. To the extent that those managers and employees are asked to testify as to what Brulant allegedly did wrong from a technical standpoint, testimony that is reserved for expert witnesses, Brulant respectfully requests that such testimony be qualified with a limiting instruction.

### ii. *Testimony from Red Baritone and Net Concepts Representatives*

Brulant also respectfully requests a limiting instruction with respect to any "expert" testimony by representatives of Campmor's subsequent e-commerce support and SEO vendors, Red Baritone and Net Concepts, in connection with what Brulant allegedly should or should not have done under the MSA and SOWs between Campmor and Brulant.[5] Once again, as explained in connection with Campmor managers and employees, supra, the representatives from Red Baritone and Net Concepts cannot provide expert testimony for the same reasons the Campmor managers and employees cannot. See F.R.E. 701, 702, supra.

Furthermore, neither Red Baritone nor Net Concepts was involved in any of the projects Brulant performed pursuant to the agreements with Campmor. This Court acknowledged this critical point in its April 30, 2013 opinion on the parties' motions *in limine*, and it stated that representatives from these two entities "may not give speculative opinions as to what Brulant did or did not do, or whether Brulant followed 'best practices' in upgrading Campmor's website." In

---

[5] Campmor has identified Robert Brown and Ed Fetyko (Red Baritone) and Patricia Fusco and Frances Nahabedian (Net Concepts) as *fact* witnesses at trial.

other words, their testimony is limited to "first-hand observations about the status of Campmor.com at the time they took over the project from Brulant."

Because Brulant anticipates that Campmor will use representatives from Red Baritone and Net Concepts as "experts," Brulant respectfully requests that any testimony elicited from these individuals be qualified with a limiting instruction.

479588_1

## POINT VI

## DEFENDANT SHOULD PREVAIL ON ITS COUNTERCLAIM.

### A.    Breach of Contract

As explained in Point I(A), <u>supra</u>, to prove a breach of contract under Ohio law, a plaintiff must establish:  (1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damages or loss to the plaintiff.  <u>Samadder v. DMF of Ohio, Inc.</u>, 154 Ohio App. 3d 770, 778 (10th Dist. 2003).  A plaintiff must prove these elements by a preponderance of the evidence.  <u>See Cooper & Pachell v. Haslage</u>, 142 Ohio App. 3d 704, 707 (9th Dist. 2001).

In Ohio, "[a]s a general rule, an injured party cannot recover damages for breach of contract beyond the amount that is established by the evidence with reasonable certainty, and generally, courts have required greater certainty in the proof of damages for breach of contract than in tort."  <u>Rhodes v. Rhodes Indus., Inc.</u>, 71 Ohio App. 3d 797, 808-09 (8th Dist. 1991).  "The damages awarded for a breach of contract should place the injured party in as good a position as it would have been in but for the breach."  <u>Textron</u>, <u>supra</u>, 115 Ohio App. 3d at 144.  These compensatory damages, otherwise known as "expectation damages," are limited to actual loss, and "that loss must be established with reasonably certainty."  <u>Doner</u>, <u>supra</u>, 98 Ohio App. 3d at 601 (2d Dist. 1994).

While it is clear that Campmor is unable to establish any breach by Brulant nor any damages suffered as a result of the breaches, Brulant is able to establish that Campmor has unequivocally breached the contract by failing to pay Brulant for services it performed for Campmor for many months preceding the institution of this action. Campmor's contention that its performance is excused because Brulant was in material breach of the contract is not

supported by law or fact. "The concept of material breach is only relevant when a plaintiff stops performing because of a defendant's breach. If a defendant fails to perform an essential or 'material' element of a contract, not only can it be liable for damages, but it also excuses the plaintiff from any further performance." Nious v. Griffin Constr., Inc., 2004 WL 1752872, at *3 (Ohio Ct. App. Aug. 5, 2004). Here, Campmor cannot realistically establish that Brulant was in material breach because it possessed a functional and accessible e-commerce website at all times herein. Campmor's unilateral and unproven dissatisfaction does absolve its performance in the form of payment.

Campmor does not dispute that it has not paid all of Campmor's invoices. Indeed, Campmor stopped paying Brulant's invoices in March/April of 2009. Rather, Campmor claims that it need not pay Brulant for its services because Brulant breached the contract. If the jury finds in favor of Brulant, as it should, that Campmor cannot prove its claim for breach of contract, then Brulant must be entitled to judgment on its claim for breach of contract and Campmor should be ordered to pay the unpaid invoices.

### B.   Unjust Enrichment

Alternatively, Campmor has asserted a claim for unjust enrichment under Ohio law. Such a claim requires a plaintiff to show the following: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." See Hambleton v. R.G. Barry Corp., 12 Ohio St. 3d 179, 183 (1984) (quoting Hummel v. Hummel, 133 Ohio St. 520, 525 (1938)); R.J. Wildner Contracting Co., Inc. v. Ohio Tpk. Comm'n, 913 F. Supp. 1031, 1043 (N.D.Ohio 1996). Unjust enrichment or quasi-contractual damages are permissible in this instance due to Campmor's constructive termination of the MSA and SOW, while requesting and accepting further work from Brulant.

479588_1

Jarashow has acknowledged that Campmor had no intention of paying Brulant for its services that were rendered in the summer and fall of 2009.  Yet, Campmor had no problem in allowing Brulant to continue to provide services throughout the summer and into the fall of 2009 for which Campmor has yet to pay for and, indeed, had no intention of paying for at the time that these services were rendered by Brulant.  Campmor's Chief Technology Officer, Erich Eyler, was also well aware that Campmor continued to work with Brulant after the agreement had been constructively terminated by Campmor.

## POINT VII

## MISCELLANEOUS TRIAL ISSUES

**A.      Testimony of Erich Eyler**

After serving trial subpoenas upon Campmor's counsel, Brulant was advised that Erich

Eyler ("Eyler"), the Director of Technology at Campmor, was no longer employed at Campmor

and Campmor could not produce Eyler at trial.   During depositions in this matter, Eyler was

produced by Campmor's counsel. Brulant was provided with Eyler's last knowm address, which

is outside of the district, but within 100 miles of the trial location. Attempts to locate and serve

Eyler have been ineffective to date.   Eyler is a key witness for Brulant concerning Campmor's

satisfaction with Brulant's services and Campmor's independent awareness of issues concerning

IBM ending support for the 5.6 version of Websphere. Brulant is engaging in further efforts to

locate and serve Elyer.

## CONCLUSION

For the foregoing reasons, Defendant, Brulant, LLC respectfully requests entry of judgment in its favor and against Plaintiff, Campmor, Inc., dismissing all claims in the Second Amended Complaint, with prejudice, and granting the relief sought in Brulant's Counterclaim.

Respectfully submitted,

LUM, DRASCO & POSITAN LLC
Attorneys for Defendant, Brulant, LLC

By: _____
DENNIS J. DRASCO
A Member of the Firm

Dated: May 22, 2013

479588_1