**GOETZ FITZPATRICK LLP**
Attorneys at Law   www.goetzfitz.com
One Penn Plaza, New York, NY 10119 | (T) 212-695-8100 | (F) 212-629-4013

Ronald D. Coleman
rcoleman@goetzfitz.com

May 24, 2013

**VIA ECF**

Honorable William H. Walls, U.S.D.J.
United States District Court
Martin Luther King, Jr. Federal Building
  and United States Courthouse
50 Walnut Street
Newark, NJ 07101

      Re:  Campmor, Inc. v. Brulant, LLC
          <u>Civil Action No. 2:09cv5465</u>

Dear Judge Walls:

  We respectfully submit this letter brief in lieu of a more formal submission in response to the motion for bifurcation filed by defendant in this matter yesterday, May 23, 2013, at 8:18 PM.

  Campmor submits that its prior filings on this subject, i.e., its correspondence to the Court of May 21, 2013 and its trial brief (Documents 118 and 119), have apprised the Court of the main legal and factual arguments to apply with respect to defendant's submission. We write now to address the arguments made in defendant's moving brief.

  **The Final Pretrial Order is not Conditional on the Outcome of Listed Pretrial Motions.** Defendant asserts that although it did not list bifurcation as an anticipated pretrial motion in the Final Pretrial Order entered on September 28, 2012, this omission should not bar it from raising it now for several reasons. None of them makes any sense. Defendant's fundamental position is that a final pretrial order is a mere first draft, and takes the position that if, between the entry of that order and the date of trial, things do not go the way one of the parties had hoped, it is entitled as a matter of right to raise new procedural or substantive issues at any time in light of those "unexpected" developments. The law, as set out in length in Campmor's prior submissions, is quite clear that this is not the case, and as a matter of justice and fairness could not be the case. Along with its earlier submissions on this issue, Campmor addresses defendant's late-afternoon motion of yesterday's date below.



Hon. William H. Walls, U.S.D.C.
May 24, 2013
Page 2 of 7

**Defendant's "Ripe for Adjudication" Rationale for its Untimely Motion has no Basis in Law or Equity.** One excuse defendant offers for raising its demand for bifurcation with the Court nearly eight months after entry of the Final Pretrial Order is what might be called the "Who knew?" rationalization. It argues that defendant did, after all, include notice that it would move to dismiss Campmor's punitive damages from the case. It follows, defendant argues, that upon granting defendant's motion, bifurcation would be irrelevant. The obvious problem with this argument, of course, is that the Court **did not** grant that motion. But, defendant impliedly asks, "Who knew" its motion would not succeed? Surely, it argues, it could hardly have been expected to account for the possibility of losing a motion when submitting its list of legal issues for inclusion in the Final Pretrial Order.

This argument is fallacious. It would have required nothing of defendant to have listed a prospective motion for bifurcation as an **alternative** form of relief in the event – eminently predictable, in fact – that its motion on punitive damages would fail. Moreover, even according to defendant's position that a party is entitled to raise an issue not addressed in the pretrial order when it unilaterally deems that issue "ripe for adjudication," that ripe fragrance should have become evident to defendant on April 30th – three weeks ago – the date on which this Court denied defendant's *in limine* motion. Granting defendant a night to sleep on its options, why is bifurcation more "ripe" now, days before the trial date, than it was on May Day?

Defendant avoids this issue by erecting a straw man – in the process, reminding the Court of the last time it tried to hide an issue in the case (the absence of a formal answer to the counterclaims) with the intent of springing it on Court and adversary at some tactically incisive moment. Thus, another "Who knew?" moment: "At the time the Final Pretrial Order was executed," defendant writes, "Campmor had never filed a pleading requesting punitive damages and Campmor took no discovery on the issue." (Defendant's Brief at 11.) Who knew, defendant asks, that Campmor was interested punitive damages?

This line of argument is beyond cynical. In that self-same order, of course, defendant gave its notice that it would move to eliminate punitive damages from the case. There was no formal answer to the counterclaim, true; but the Final Pretrial Order that, as a matter of law, subsumed and replaced the pleadings contained no fewer than seven references to punitive damages. There is only one thing that was **not** mentioned in the Final Pretrial Order regarding punitive damages: Notice that defendant intended to use them as ground for a bifurcation motion.[1]

---

[1] Defendant's other rationalization – that "Campmor took no discovery on the issue" – is not merely incoherent; it is frivolous. There is no special designation for noticing "punitive damages discovery" to distinguish it from other discovery. Nor would there be a need for any in light of the fact that during discovery Campmor's fraud-based claims were still part of the case, for discovery concerning such claims



The requirement that all legal issues be addressed in the Final Pretrial Order is not a mere formality. Its purpose is to give all the parties adequate opportunity to prepare for trial. Indeed, the Court's decision to permit defendant to make a motion at this late date has, it is respectfully submitted, already worked significant prejudice to Campmor. It has caused Campmor's counsel significant distraction from pretrial preparation in the week prior to trial, when every minute counts and a myriad of filings have been mandated by the Final Pretrial Order. Campmor has also been forced to bear significant expense to oppose this motion, one of a long series of transparently meritless motions filed by defendant that have been denied by this Court and then filed again in another form.[2] This could all have been avoided if, when the parties were negotiating the Final Pretrial Order, defendant had given notice of its intention to seek bifurcation. Defendant's rationalizations as to why it did not do so are not credible.

**Defendant Has Not Demonstrated that it is Entitled to Amend the Pretrial Order in the Interests of Justice.** Defendant's refusal to substantively address what could, at best, be its only valid substantive basis for relief here – that amendment of the Final Pretrial Order is justified in the interests of justice – is understandable. Justice could not be served by ordering bifurcation at this late date.

Defendant recites the "interest of justice" formula but does not engage with it, instead conflating its claimed substantive basis for relief with the "interest of justice." This is not the "interest of justice" standard, however. "The interests of justice go beyond the interests of the parties to the particular suit . . ." *Fort Howard Paper Co. v. Standard Havens, Inc.*, 901 F.2d 1373, 1380 (7th Cir.1990) (denying motion to amend complaint after grant of order for new trial). Justice is the furthest thing from defendant's mind here, of course – so it does not even pretend consideration of the hardship, prejudice and injustice its last-minute claim for relief would, if granted, work on its adversary.

Defendant does not explain how justice would be served it the Court were to reward it for raising an issue on the eve of trial that could have readily have been included in the Final Pretrial Order. Defendant does not so much as acknowledge the obvious fact that Campmor has spent the months since the closing of the Final Pretrial Order planning for a trial whose specific and clear parameters are defined by that Order, which under the Rules is crafted jointly and cooperatively but, once entered, is final and

---

would differ little, if at all, from discovery relating to facts that would provide grounds for an award of punitive damages.

[2] Campmor notes that defendant has placed new iterations of many of these same exact issues before the Court yet again in defendant's late-filed trial brief. These are the same issues that failed when made in the form of, successively, a 12(b)(6) motion, a summary judgment motion and a motion in limine. Defendant is evidently confident that it has nothing whatsoever to lose from this improper practice.


dispositive. Defendant does not explain how, after Campmor has labored to organize and prepare its case – not least with respect to scheduling and arranging for the preparation and logistics of evidence and the availability and order of witnesses, both lay and expert – its unilateral determination that bifurcation is now "ripe for adjudication" can "justify" a late-night motion on the eve of the last business day before jury selection seeking to completely restructure that trial.

For these reasons, the Court should deny the motion because it is untimely and is barred by the Final Pretrial Order and the related provisions of the Federal Rules of Civil Procedure.

**Defendant Misstates the Substantive Law That Governs Motions for Bifurcation.** Finally, even arguing its case under the incorrect standard, i.e., the supposedly overriding urgency of Ohio law mandating bifurcation, defendant has misstated that standard and failed to cite on-point authority contrary to its position. Having sprung this unnecessarily untimely last-minute motion on the Court and the plaintiff days before trial, defendant should at the very least have acknowledged and attempted to distinguish recent, on-point Ohio federal court decisions which, applying Ohio law, have come to the exact opposite conclusion from that urged by defendant. These decisions flatly contradict defendant's assertions with respect to what procedural rule a federal court should apply when considering bifurcation question and as to whether Ohio state law may "mandate" procedure in the federal courts.

These are not novel cases; they rely on and cite established precedent. And they **explicitly** negate defendant's claim that under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), the Federal Rules of Civil Procedure have nothing to say here. For example, in *Patel Family Trust v. AMCO Ins. Co.,* 2012 WL 2883726 (S.D. Ohio July 13, 2012), which is not acknowledged by defendant, the Southern District of Ohio **explicitly** rejected the position – assumed by the defendant in this case – that because *Havel v. Villa St. Joseph*, 131 Ohio St.3d 235 (2012) characterized bifurcation as a "substantive right" under Ohio law, federal courts can or may dispense with the Federal Rules of Civil Procedure when considering bifurcation motions concerning claims based on Ohio law:

> The [Joint] Motion asks this Court to enter an order bifurcating the insurance breach-of-contract claims from the bad faith and punitive damages claims in this action. . .
>
> It should go without saying that this action is pending in the United States District Court for the Southern District of Ohio. Yet, the Joint Motion does not cite to Fed. R. Civ. P. 42(b), which provides for bifurcated trials for reasons of "convenience, to avoid prejudice, or to expedite and economize." Rather, the Joint Motion asks for bifurcation based on a slew of Ohio appellate cases standing for the proposition that bifurcation of the breach-of-contract and bad



faith aspects of the case are proper and "routine." The Joint Motion also invokes Ohio Rev. Code § 2315.21(B), which provides for mandatory bifurcation of the punitive damages portion of the case from the compensatory damages portion. In essence, the parties to the Joint Motion ask this Court to bifurcate the proceedings in this case into separate breach-of-contract and bad faith/punitive damages phases based on Ohio law.

**Ohio law does not, however, govern the question of whether bifurcation of proceedings is proper in a given case.** As the undersigned judge ruled two years ago when addressing the supposed duty to bifurcate under Ohio Rev. FRCode § 2315.21(B), the question of whether bifurcation is appropriate is governed by federal law under the teachings of E*rie R.R. Co. v. Tompkins*, 304 U.S. 64, (1938) and its progeny (particularly *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)). *See Wolkosky v. 21st Century Centennial Ins. Co*., No. 2:10–cv–439, 2010 U.S. Dist. LEXIS 79643, at *3–*8, 2010 WL 2788676 (S.D. Ohio July 14, 2012). **Bifurcation is a procedural matter addressed by Fed. R. Civ. P. 42(b) and, thus, Rule 42(b) is the controlling authority for assessing whether a federal court will grant a motion to bifurcate.** *See id*. at *7; *accord Valley Ford Truck, Inc. v. Phoenix Ins. Co*., No. 1:10–cv–2170, 2011 U.S. Dist. LEXIS 29210, at *2–*3, 2011 WL 841177 (N.D. Ohio Mar. 7, 2011) (rejecting Ohio Rev. Code § 2315.21(B) as "**entirely irrelevant**" to the issue of bifurcation because bifurcation is a procedural matter governed by federal law).

The Ohio Supreme Court's recent decision in *Havel v. Villa St. Joseph*, 131 Ohio St.3d 235, does not change this Court's opinion regarding the procedural nature of bifurcation. . . .

Just because the Ohio Supreme Court has interpreted Ohio Rev. Code § 2315.21(B) to provide a "substantive" right to bifurcation does not mean that a federal court is bound by the characterization. A state's characterization of its own rule as "substantive" instead of "procedural" must "yield to the strong presumptive validity of the properly promulgated federal procedural rule, which will be upheld as controlling the procedure in the federal court." *Rosales v. Honda Motor Co*., 726 F.2d 259, 262 (5th Cir. 1984). Accordingly, numerous federal courts have found that Fed. R. Civ. P. 42(b) controls the issue of bifurcation in federal diversity cases despite the existence of a state law or rule purporting to substantively govern bifurcation. *See*, e.g., *id*. at 261–62 (concluding under *Hanna* that Fed. R. Civ. P. 42(b) controlled over a Texas substantive law prohibiting bifurcation); *Moss v. Associated Transport, Inc*., 344 F.2d 25–27 (6th Cir.1965) (holding that Rule 42(b) preempts Tennessee law guaranteeing right to try all facts at the same time before one jury); *see also Getty Petroleum Corp. v. Island Transp. Corp*., 862 F.2d 10, 14–15 (2d Cir.1988) (finding that district court did not have to bifurcate liability and



> punitive damage issues despite state law requiring bifurcation), *cert. denied*, 490 U.S. 1006 (1989); *Sellers v. Baisier*, 792 F.2d 690, 694 (7th Cir.1986) (holding that Fed. R. Civ. P. 42 may be applied in diversity cases to bifurcate issues of liability and damages despite a state law prohibiting bifurcated trials). This Court will therefore rule upon the Joint Motion utilizing Fed. R. Civ. P. 42(b) as the relevant authority underlying the analysis.
>
> Bifurcation is . . . considered an exception to the general rule that favors resolving federal-court disputes in a single proceeding. *Wolkosky* at *8.
>
> Presumably because Patel and AMCO rely solely on Ohio law and the fact of their agreement as the bases for bifurcation, their Joint Motion does not speak to any of the above Fed. R. Civ. P. 42(b) factors specifically. Accordingly, the Court has before it no facts that would support a decision to grant bifurcation.

*Patel*, 2012 WL 2883726 at *1-*3 *(emphasis added). The *Patel* court explained that if a party – as defendant has done here – ignores the requirements of Rule 42(b) and thereby fails to show that the standards for bifurcation under that Rule are met, its bifurcation motion must be denied.

**Defendant has not met its burden of showing that bifurcation is appropriate here.** The continued validity of the well-reasoned, extensively sourced and directly on-point 2012 *Patel* decision – one that defendant saw fit to omit from its brief – was affirmed little more than two weeks ago in *C.B. Fleet Co., Inc. v. Colony Specialty Ins. Co.*, 2013 WL 1908098 (N.D. Ohio, May 7, 2013)(Slip Copy). Citing *Patel*'s teaching that "numerous cases have held § 2315.21(B) is 'entirely irrelevant to the issue of bifurcation [in federal court] because bifurcation is a procedural matter governed by federal law,'" the Northern District of Ohio denied a motion to bifurcate under the Rule 42(b) standard. The *C.B. Fleet Co.* court also enunciated another point that is also directly applicable to the present motion: The fact that the evidence of liability here is the same as the evidence concerning punitive damages, making bifurcation utterly pointless:

> Turning to the question of bifurcation, Colony asserts it will suffer prejudice if the jury's consideration of Fleet's breach of contract claim is "tainted" by having seen documents relevant only to Fleet's bad faith claim. But virtually all of the documents Fleet will use to support its bad faith claim are also relevant to the breach of contract claim. The questions . . . are closely bound up.
>
> Colony has not shown it would suffer any real prejudice if all of Fleet's claims are tried together. It remains true that bifurcation would be inconvenient and uneconomical for the parties, the Court, and the jurors, and a single trial would best serve the "efficient administration of justice."



2013 WL 1908098 *Id*. at \*5.

Defendant's brief omits any mention of *C.B. Fleet Co.* as well, and for good reason. Here too, as in *C.B. Fleet Co.*, "virtually all of the documents" and testimony that the party opposing a punitive-damages bifurcation motion will use to support its case for punitive damages is relevant to proving defendant's liability for breach of contract and other substantive claims. Defendant has not seen fit to place before the Court **a single document or line of testimony** that it so much as contends would be admissible only in the punitive damages phase of a bifurcated trial but not on Campmor's liability claims.

**Conclusion.** It is self-evident that defendant seeks to split this trial into two notional halves in the desperate hope that by depriving the jury of powerful, damning and highly relevant evidence, there will be no second half. This, however, is not a legitimate ground for bifurcation; to the contrary, it would, if allowed, constitute nothing less than a negation of the Court's truth-seeking function. Defendant has decided on a concerted, all-out effort to find something – **anything** – that will keep the mass of smoking-gun evidence against it away from the jury. That is because defendant knows, as the Court has ruled, that this evidence could provide grounds for a jury to find defendant liable for the full extent of the egregious harm it did to Campmor based on negligence or recklessness.

Only by barring the jury from learning what defendant knew about the Campmor project's progress and when it knew it – and how contemptuously it proceeded despite that knowledge, going so far as to threaten Campmor with litigation if it did not keep paying defendant more and more despite its callous devastation of the Campmor online business – can defendant hope to limit its liability to some measure of simple contract damages. The Court has, however, repeatedly denied defendant's attempts to achieve this illegitimate goal by restricting the jury's access to relevant proof. It should do so here as well.

For these reasons, Campmor requests that the Court not only deny this motion but also bar **any** further applications by defendant – including under the guise of objections at trial based on arguments rejected in its *in limine* motions – aimed at keeping from the the jury evidence that this Court has already ruled admissible of defendant's wanton, reckless malfeasance when assessing defendant's liability on Campmor's claims on any ground.

Respectfully submitted,

Ronald D. Coleman