**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CAMPMOR, INC.,<br>Plaintiff,<br><br>v.<br><br>BRULANT, LLC,<br><br>Defendant. | **OPINION**<br><br>Civ. No. 2:09-cv-05465 (WHW) (CLW) |

**Walls, Senior District Judge**

Arbitration has concluded, and Defendant Brulant, LLC ("Brulant") moves to confirm the arbitration award. Plaintiff Campmor, Inc. ("Campmor") cross-moves to vacate the award. In response to Campmor's cross-motion, Brulant has filed a motion for sanctions. These motions have been decided without oral argument under Federal Rule of Civil Procedure 78(b). Defendant Brulant's motion to confirm the arbitration award is granted, Plaintiff Campmor's cross-motion to vacate the award is denied, and Defendant Brulant's motion for sanctions is denied.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Campmor, a retailer of recreational equipment, filed this action against Brulant, an internet marketing firm, in 2009. Brulant asserted counterclaims. After years of discovery and trial preparation, the parties agreed to resolve their dispute through binding arbitration. They executed an Agreement for Binding Arbitration (the "Arbitration Agreement") on September 9, 2013. Decl. of Dennis J. Drasco in Supp. Mot. to Confirm Award ("Drasco Decl."), Ex. A, ECF No. 138-2. On September 23, 2013, the parties stipulated to the dismissal of their claims but

provided that this Court would retain jurisdiction to confirm any arbitration award. Stip. of Dismissal, ECF No. 135.

The Arbitration Agreement provided that the parties would select, by mutual agreement, a retired U.S. Magistrate Judge or U.S. District Court Judge of the District of New Jersey to be their sole arbitrator. Drasco Decl., Ex. A, ¶ 9. The Arbitration Agreement also included a clause to govern eventual judicial review of the arbitration award: "The determination of the Arbitrator shall be final and binding upon the Parties and shall be reviewable in the same manner as a binding arbitration award under New Jersey Law, with the exclusive venue for such a review to be the United States District Court, District of New Jersey." *Id.* ¶ 3.

The parties selected former Chief Judge of the District of New Jersey Garrett E. Brown as their arbitrator. Mem. in Supp. Def.'s Mot. to Confirm Award ("Def.'s Mem.") 3, ECF No. 138-1; Mem. in Supp. Pl.'s Cross-Mot. to Vacate Award ("Pl.'s Mem.") 1-2, ECF No. 140-7. Judge Brown presided over a series of arbitration hearings from October 2013 to February 2014. Def.'s Mem. 3; Cert. of Ronald D. Coleman ("Coleman Cert.") ¶ 17, ECF No. 140-1. Judge Brown issued a detailed decision and final arbitration award on July 1, 2014, which resolved all issues in dispute between the parties. Drasco Decl., Ex. B.

Moving to confirm the award, Brulant argues that confirmation is appropriate under the New Jersey Uniform Arbitration Act because there are no valid grounds for vacating or modifying the award. Def.'s Mem. 4-6. By cross-motion, Campmor argues that the award should be vacated because Judge Brown did not disclose his past contacts with Brulant's counsel Dennis Drasco and because Judge Brown's law clerk, Patrick Murphy, did not disclose his past employment with Magistrate Judge Madeline Cox Arleo. Pl.'s Mem. 2-5.

Campmor asserts that Judge Brown had several contacts with Brulant's counsel Dennis Drasco which he was required to disclose but never did. Campmor emphasizes Judge Brown's contact with Mr. Drasco through an organization called the Lawyers' Advisory Committee (the "LAC"). Coleman Cert. ¶¶ 20-28; Cert. of Brian D. Farkas ("Farkas Cert.") ¶¶ 3-16, ECF No. 140-5. According to the LAC's Chairman, its membership includes all U.S. Magistrate Judges and U.S. District Court Judges in the District of New Jersey, representatives of the U.S. Attorney's Office for the District of New Jersey and the New Jersey Attorney General's Office, and approximately forty-five to fifty attorneys and retired judges. Decl. of Thomas R. Curtin ("Curtin Decl.") ¶ 4, ECF No. 141-2. All judges in the District of New Jersey are automatically considered members of the LAC, regardless of whether they attend LAC meetings. *Id.* ¶ 5. The LAC's mission is to "serve the United States District Court for the District of New Jersey in achieving, dispensing and administering justice in a fair, impartial, effective and efficient manner." *Id.* ¶ 3; Coleman Cert. ¶ 22.

Campmor points out that both Judge Brown and Dennis Drasco are members of the LAC and have attended and participated in some of the same LAC meetings. Coleman Cert. ¶ 26; Farkas Cert. ¶ 3. Like Judge Brown, Mr. Drasco at first "automatically" served on the LAC due to his position as President of the Association of the Federal Bar of New Jersey. Farkas Cert. ¶ 12. Campmor indicates that once Mr. Drasco stepped down from this position, he requested permission to remain an LAC member. *Id.* ¶ 13. The Chairman of the LAC, Thomas Curtin, brought the request to Judge Brown, who was then officially responsible for appointing LAC members as Chief Judge of the District of New Jersey, and Judge Brown appointed Mr. Drasco as an LAC member. *Id.* ¶¶ 7, 12-13.

**NOT FOR PUBLICATION**

Outside of their contact through the LAC, Campmor cites two public events that demonstrate acquaintance between Judge Brown and Mr. Drasco. One is a 2008 swearing-in ceremony for newly admitted attorneys in which Judge Brown and Mr. Drasco both participated. Coleman Cert. ¶ 30. The other is a 2008 address to the New Jersey State Bar Association, in which Judge Brown recognized Mr. Drasco for having made a recommendation regarding oral argument in the District of New Jersey. *Id.* ¶ 31.

Campmor also points to Mr. Drasco's participation as a lawyer in two cases that were before Judge Brown while he was serving on the District Court for the District of New Jersey. *Id.* ¶ 32. Finally, Campmor suggests that Judge Brown and Mr. Drasco may have had contact through the Association of the Federal Bar of New Jersey, as Judge Brown served on the Advisory Board of the Association at a time after Mr. Drasco was the organization's president. *Id.* ¶ 29. Campmor argues that the arbitration award must be vacated because Judge Brown did not disclose these contacts. Pl.'s Mem. 2-4.

Campmor also argues that the arbitration award must be vacated because Judge Brown's law clerk, Patrick Murphy, did not disclose that he was previously a law clerk to Magistrate Judge Madeline Cox Arleo when she was involved in settlement negotiations between the parties. *Id.* at 5. Campmor asserts that Patrick Murphy was employed by Magistrate Judge Arleo from April to October 2013, and that Magistrate Judge Arleo conducted a settlement conference between the parties and received confidential *ex parte* communications from Campmor during this period. Coleman Cert. ¶¶ 37-41.

In response to Campmor's cross-motion to vacate, Brulant moves for sanctions. Brulant argues that sanctions should be imposed against Campmor under Federal Rule of Civil Procedure 11 because Campmor's cross-motion does not have any legal or factual basis. Def.'s Br. in Supp.

Mot. for Sanctions ("Def.'s Sanctions Br.") 5-18, ECF No. 146-1. Brulant also contends that sanctions are appropriate because Campmor's counsel violated ethical rules when investigating facts for its cross-motion. *Id.* at 19-20.

**DISCUSSION**

**1. Choice of Law**

New Jersey law governs the Court's review of this arbitration award. The Federal Arbitration Act ("FAA") "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford Jr. Univ.*, 489 U.S. 468, 478 (1989). In their arbitration agreements, parties may "agree to apply state law enforcement mechanisms in lieu of the FAA default rules." *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277, 292 (3d Cir. 2010). Federal courts will apply state law when reviewing an arbitration award if the parties' arbitration agreement expresses "clear intent" to invoke state law vacatur standards. *Id.* (quoting *Roadway Package Sys., Inc. v. Kayser*, 257 F.3d 287, 288, 293, 295 (3d Cir. 2001)).

The parties' Agreement for Binding Arbitration expresses clear intent for New Jersey law to govern this Court's review of the arbitration award. The agreement states that the arbitrator's determination "shall be reviewable in the same manner as a binding arbitration award under New Jersey Law, with the exclusive venue for such a review to be the United States District Court, District of New Jersey." Drasco Decl., Ex. A, ¶ 3. The Court agrees with both parties that this provision effectively invokes New Jersey vacatur standards.

**2. Standard of Review**

Under New Jersey law, "the scope of review of an arbitration award is narrow." *Fawzy v. Fawzy*, 199 N.J. 456, 470 (2009). Arbitration is a substitute, not springboard, for litigation which

"can attain its goal of providing final, speedy and inexpensive settlement of disputes only if judicial interference with the process is minimized." *Barcon Associates, Inc. v. Tri-Cnty. Asphalt Corp.*, 86 N.J. 179, 187 (1981). The New Jersey Uniform Arbitration Act (the "N.J. Arbitration Act" or "Act") governs private arbitration proceedings. *Fawzy*, 199 N.J. at 469-70. The Act provides that a reviewing court "shall" confirm an arbitration award unless the award is modified, corrected, or vacated. N.J. Stat. Ann. § 2A:23B-22. It further provides that an award can only be vacated under specific circumstances. *Id*. § 2A:23B-23. One circumstance requiring vacatur is the existence of "evident partiality by an arbitrator; corruption by an arbitrator; or misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding." *Id.* The party alleging that an arbitrator acted with "evident partiality" must prove it by a preponderance of the evidence. *Barcon Associates*, 86 N.J. at 191.

**3. Analysis**

**a. Judge Brown's Past Contacts with Mr. Drasco**

Campmor argues that this Court must vacate the arbitration award for evident partiality because Judge Brown did not disclose his past contacts with Mr. Drasco.

The N.J. Arbitration Act provides that "an individual who is requested to serve as an arbitrator, after making a reasonable inquiry, shall disclose to all parties . . . any known facts that a reasonable person would consider likely to affect the impartiality of the arbitrator in the arbitration proceeding, including: . . . (2) an existing or past relationship with any of the parties to the agreement to arbitrate or the arbitration proceeding, their counsel or representatives, a witness, or other arbitrators." N.J. Stat. Ann. § 2A:23B-12. If a party fails to make a required disclosure, the statute provides that a reviewing court "may vacate an award" under Section 2A:23B-23(a)(2),

which provides for vacatur upon a court's finding of evident partiality, corruption, or prejudicial misconduct by an arbitrator. *Id.* §§ 2A:23B-12, 2A:23B-23(a)(2).

The Court finds that Judge Brown was not required to disclose his past contacts with Mr. Drasco because a reasonable person would not consider them likely to affect his impartiality as an arbitrator.[1] Campmor's assertions suggest nothing more than that Judge Brown and Mr. Drasco were familiar with one another in their professional capacities. Campmor argues that Judge Brown's and Mr. Drasco's concurrent membership in the LAC and Judge Brown's appointment of Mr. Drasco as an LAC member required disclosure. Campmor also lists Judge Brown's participation with Mr. Drasco in a swearing-in ceremony, Judge Brown's public acknowledgement of a recommendation made by Mr. Drasco, and Mr. Drasco's participation in lawsuits before Judge Brown as requiring disclosure. Tying these contacts together, Campmor maintains that they amount to "a deeper professional relationship, extending for years" between Judge Brown and Mr. Drasco, which "reached its apex . . . with Mr. Drasco's appointment by Judge Brown" to the LAC. Pl.'s Mem. in Opp. to Def.'s Mot. for Sanctions 17, ECF No. 149.

This argument falls short. Campmor highlights Judge Brown's appointment of Mr. Drasco to the LAC as the best example of a fact that required disclosure, but its description of the appointment suggests it was administrative and routine. Campmor itself acknowledges that Judge Brown was officially responsible for appointing LAC members as Chief Judge of the District of

[1] Before the enactment of the New Jersey Uniform Arbitration Act of 2003, the New Jersey Supreme Court established a similar but distinct standard for evaluating non-disclosures in post-award challenges, which allowed for discretionary vacatur if the arbitrator did not disclose a fact that would have led a reasonable person to object to the arbitrator's designation. *Barcon* Associates, 86 N.J. at 195. New Jersey courts have not explicitly decided whether this standard was superseded by the Act. *See JML Med., Inc. v. Silver*, No. A-4907-11T1, 2013 WL 1234990, *4 n.3 (N.J. Super. Ct. App. Div. Mar. 28, 2013). This Court does not address the issue because it concludes that the non-disclosure of Judge Brown's past contacts with Mr. Drasco does not require vacatur under either standard.

New Jersey. Coleman Cert. ¶ 25. Campmor also acknowledges that Thomas Curtin, the LAC Chairman, brought potential new members' names to Judge Brown and "the Chief Judge [would] typically agree to appoint the particular individual." Farkas Cert. ¶ 10. Campmor states that this is also what happened in Mr. Drasco's case, diminishing its argument that Mr. Drasco's appointment represents the "apex" of some deeper professional relationship between Judge Brown and Mr. Drasco. *Id.* ¶ 13. Like the other contacts between Judge Brown and Mr. Drasco that Campmor recites, nothing about this appointment suggests more than professional familiarity. Placed in context, it gives the reasonable person no reason to question Judge Brown's impartiality in a later, unrelated arbitration in which Mr. Drasco participated as counsel.

Even if the Court had concluded that Judge Brown was required to disclose his past contacts with Mr. Drasco, vacatur of the arbitration award for "evident partiality" would be discretionary and unwarranted. N.J. Stat. Ann. § 2A:23B-12 (providing that a court "may" vacate an arbitration award for evident partiality if an arbitrator failed to make required disclosures). In *Barcon Associates*, the New Jersey Supreme Court quoted Justice White's controlling opinion in *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145 (1968), for the proposition that "[i]f arbitrators err on the side of disclosure . . . it will not be difficult for courts to identify those undisclosed relationships which are too insubstantial to warrant vacating an award." 86 N.J. at 194-95. This case is readily identifiable as one in which the undisclosed relationships are too insubstantial to warrant vacatur.

Courts have recognized that professional familiarity between an arbitrator and a party's lawyer does not show evident partiality, let alone establish it by a preponderance of the evidence. Although New Jersey courts have rarely considered analogous complaints about an arbitrator's non-disclosure of professional contacts with counsel, the New Jersey Appellate Division has held

in an unpublished opinion that an arbitrator's concurrent membership in professional organizations with a party's lawyer does not support an allegation of partiality.[2] *Ort v. Ort*, No. A-1431-07T1, 2009 WL 1118755, *2-3 (N.J. Super. Ct. App. Div. Apr. 28, 2009) ("We are not so far removed from the realities of the practice of law in a small state that it would seem surprising that their professional paths would cross. Nothing about those professional interactions in any way touches upon this dispute."). Likewise the Third Circuit, interpreting the FAA's "evident partiality" standard, has held that proving evident partiality from an arbitrator's non-disclosure of past contacts "requires more than suppositions based on mutual familiarity." *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 256 (3d Cir. 2013) (finding that arbitrator's non-disclosure of teaching relationship with attorney for defendant's partial owner did not establish evident partiality).

Finally, the Court notes that all of Judge Brown's contacts with Mr. Drasco relate to his service as Chief Judge of the District of New Jersey. When parties agree to select a retired judge from a particular district as their arbitrator, they must anticipate the judge's professional familiarity with many of the lawyers who practice in that district.[3] While judges should err on the side of disclosure before arbitrating, they are not required to disclose all contacts they have ever had with the parties' lawyers at penalty of vacatur.

---

[2] Unpublished opinions do not have binding authority under New Jersey law, but can constitute persuasive authority. *See Reid v. Transp. Ins. Co.*, 502 F. App'x 157, 160 n.2 (3d Cir. 2012); *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 152 & n. 6 (3d Cir.1988) (citing an unpublished New Jersey Superior Court decision, recognizing that "we are not bound by that decision," but noting that the "New Jersey rules are, of course, binding only on the New Jersey courts, and we would be remiss in our duty to apply New Jersey law were we to ignore a New Jersey case where the relevant issue is identical").

[3] The Court declines to decide whether Campmor waived its objections to Judge Brown's non-disclosure. The Court need not do so, given its finding that Judge Brown was not required to disclose his earlier contacts with Mr. Drasco.

Although Judge Brown's disclosure of his past contacts with Mr. Drasco would have been beneficial at the outset of the parties' arbitration, the Court finds that such disclosure was not required and does not warrant vacatur.

**b. Patrick Murphy's Employment with Magistrate Judge Arleo**

Campmor also argues that the arbitration award must be vacated because Judge Brown's law clerk, Patrick Murphy, did not disclose his employment with Magistrate Judge Arleo while she was involved in the underlying lawsuit. The Court will not vacate the arbitration award on these grounds.

Campmor alleges that Mr. Murphy clerked for Magistrate Judge Arleo at a time when she conducted a settlement negotiation between the parties and received *ex parte* communications from Campmor. Coleman Cert. ¶¶ 37-41. Campmor does not assert, however, that Mr. Murphy was actually involved with the settlement negotiations. *Id.* at ¶ 42. Nor does Campmor explain how the non-disclosure of Mr. Murphy's past employment mandates vacatur of the arbitration award under the N.J. Arbitration Act. If Campmor is asserting that vacatur is warranted on evident partiality grounds, under N.J. Stat. Ann. § 2A:23B-23(a)(2), it is not apparent that a reasonable person would consider Mr. Murphy's past employment with Magistrate Judge Arleo likely to affect Judge Brown's impartiality as arbitrator. Without guidance from Campmor as to the nature of its legal argument, the Court does not find any basis for vacatur in Mr. Murphy's non-disclosure of his earlier employment by Magistrate Judge Arleo.

**4. Sanctions**

Brulant argues that sanctions should be imposed on Campmor under Federal Rule of Civil Procedure 11 because its cross-motion to vacate the arbitration award did not have a factual or legal basis. Def.'s Sanctions Br. 5-18. Brulant also argues that sanctions should be imposed on

Campmor and its counsel because its counsel made allegedly misleading statements while investigating the factual basis for its cross-motion. *Id.* at 19-20. The Court does not agree that Rule 11 sanctions are appropriate.

Federal Rule of Civil Procedure 11 "provides that attorneys may be sanctioned if they, among other things, fail to make a reasonable inquiry into the legal legitimacy of a pleading." *Ario*, 618 F.3d at 297. The district court must determine whether the attorney's conduct was "objectively reasonable under the circumstances." *Id.* Sanctions are appropriate "only in the exceptional circumstance where a claim or motion is patently unmeritorious or frivolous." *Id.* (internal quotations omitted). Although Campmor's argument for vacatur is unpersuasive, its cross-motion to vacate was objectively reasonable. Campmor's brief relies on applicable statutes and case law, which do not expressly foreclose its argument that the disclosures which were absent in this case justified vacatur. Campmor's cross-motion was not "patently unmeritorious or frivolous" and sanctions are unnecessary.

Brulant also asserts that sanctions are appropriate because Campmor's counsel violated ethical rules while investigating facts for its cross-motion. Def.'s Sanctions Br. 19-20. Brulant asserts that, in phone conversations with the LAC Chairman Thomas Curtin, Campmor's counsel "led Mr. Curtin to believe that he was discussing a prospective arbitration, and did not disclose that his inquiries related to a completed arbitration." *Id.* at 19; *see also* Curtin Decl. ¶ 8. Brulant argues that by so misleading Mr. Curtin, Campmor's counsel violated Rule 4.1 of the New Jersey Rules of Professional Conduct which prohibits making "a false statement of material fact to a third person." N.J. Rules of Prof'l Conduct R. 4.1. Brulant also argues that Campmor's counsel potentially violated Rule 3.3 of the New Jersey Rules of Professional Conduct, which requires candor to the Court, by omitting from his certification details about any misleading statements or

**NOT FOR PUBLICATION**

omissions made in his conversations with Mr. Curtin. *Id.* at 20; N.J. Rules of Prof'l Conduct R. 3.3.

Brulant's allegations of ethical misconduct do not support its motion for sanctions under Federal Rule of Civil Procedure 11, as Rule 11 does not authorize sanctions for the ethical violations Brulant alleges. *See* Fed. R. Civ. P. 11. The non-binding cases Brulant cites for the proposition that factual omissions in motion papers can support Rule 11 sanctions, Def.'s Reply Br. in Supp. Sanctions 11-12, ECF No. 151, make clear that "[o]nly those factual omissions that are material or render the pleading misleading as a whole" may warrant Rule 11 sanctions. *In re Kouterick*, 167 B.R. 353, 364 (Bankr. D.N.J. 1994). The omitted portions of Mr. Farkas's conversation with Mr. Curtin, regarding the objective of their conversation and Mr. Curtin's respect for Judge Brown and Mr. Drasco, were not material to and did not render misleading the argument in Campmor's cross-motion that specific non-disclosures warranted vacatur of the arbitration award.

The Court does not find Rule 11 sanctions appropriate, nor will the Court exercise its inherent power to police attorney misconduct by imposing sanctions. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). The Court is not convinced that Mr. Curtin's statements to Mr. Farkas about the LAC were dependent on whether there had been or was to be an arbitration.

**CONCLUSION**

Defendant Brulant's motion to confirm the arbitration award is granted, Plaintiff Campmor's cross-motion to vacate the award is denied, and Defendant Brulant's motion for sanctions is denied. An appropriate order follows.

Date: October 21, 2014

**/s/ William H. Walls**
United States Senior District Judge